Western States Mutual Automobile Insurance Co., Appellee, v. Lonnie H. May, Individually, and Ida May, as Administrator of Estate of Charles W. May, Deceased, Appellants.

Gen. No. 47,289.

First District, First Division.

June 30, 1958.

Rehearing denied September 18, 1958.

Released for publication September 29, 1958.

Harold E. Friedman, of Chicago, for appellants.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Oswell G. Treadway, of counsel) for appellee.

JUSTICE ROBSON delivered the opinion of the court.

This is an appeal from a declaratory judgment declaring void a policy of automobile liability insurance. The cause was tried upon the pleadings and upon a stipulation of facts signed by counsel. Plaintiff has predicated this action on the theory that the policy was void because of a misrepresentation of the true identity of the owner of the automobile. Defendants have resisted on the grounds that all necessary parties defendant were not joined and that any misrepresentation as to ownership was not material to Lonnie May's right to maintain liability insurance on his son's automobile.

The facts may be simply stated as follows: In 1954, Charles W. May owned an automobile which was duly

registered in his name in the office of the Secretary of State of Illinois. Though still a minor when he purchased the automobile in December, 1953, Charles W. May became twenty-one years old on April 28, 1954. He resided with his parents, the defendants herein, in Chicago. In February, 1954, Charles and his father discussed automobile liability insurance. One Warren E. Klug, a licensed life insurance salesman, was present during the discussion and volunteered to place such insurance with an insurer. It was stipulated by counsel that Klug was not acting as agent for plaintiff. On the following day Klug returned to the May residence and Charles paid him $230 for premiums on a policy of automobile liability insurance. Klug delivered plaintiff's application for insurance, which he prepared, to Meyer Kronberg, an insurance broker, who in turn submitted it to Karl Treen, an agent for plaintiff. The application was never submitted to Lonnie or Charles May and was never signed by either of them. On April 16, 1954, plaintiff issued a policy of insurance in the name of the father, Lonnie, as insured and owner of the vehicle.

While Lonnie was present, Klug delivered the policy to Charles. At that time Lonnie informed Klug that he was not the owner of the car and that he would assume no responsibility for it. The record indicates that Klug then told Lonnie that he "would take care of it in a few weeks." Klug never paid over to plaintiff the premiums paid him by Charles. Meanwhile, Lonnie received a statement from plaintiff's agent, Karl Treen, requesting payment for the premiums. Lonnie went to Treen's office and explained that premium payments had been made by Charles to Klug. Charles then retained an attorney and recovered the money he had paid to Klug. Charles also applied for another policy of insurance which was issued to him by the

Allstate Insurance Co. The premium on the plaintiff's policy was never paid.

On July 13, 1954, while his policy with Allstate was in full force and effect Charles and two of his passengers were killed in an accident which occurred while Charles was driving his car two miles southeast of Whitwell, Tennessee. Three other passengers were injured. All the passengers were residents of Whitwell, Tennessee. Suits for damages were thereafter filed in Tennessee by the injured passengers and the personal representatives of those who had been killed. Lonnie May was named defendant both individually and as administrator of the estate of Charles. The accident was reported to plaintiff, and, upon investigation, plaintiff ascertained that Lonnie May was not the owner of the automobile as described in the application for insurance. The plaintiff disclaimed liability on the policy because of misrepresentations as to the ownership of the automobile. Lonnie then tendered a premium payment of $162.97 to plaintiff and it was refused. Two weeks thereafter plaintiff filed this suit for a declaratory judgment against Lonnie H. May, individually and as administrator of the estate of Charles May. While this suit was in progress, Ida May, the mother of Charles, was substituted as the administrator of his estate.

■ As to defendants' first contention that plaintiffs in the Tennessee actions were necessary parties defendant to this suit, we do not agree. The controversy between the insurer and the named insured involves simply the question whether or not there was ever a valid contract between them. We distinguish such a controversy from that between an insured and insurer in which the insurer seeks a suspension of its liability because of a failure on the part of the insured to comply in some respect with the terms of a valid

445

contract, or because the claim against the insured does not fall within the coverage of the policy to which defendants' cited cases apply. American General Ins. Co. v. Booze, 146 F.2d 329 (CCA 9th, 1944); Standard Accident Ins. Co. v. Meadows, 125 F.2d 422 (CCA 5th, 1942); Aetna Casualty & Surety Co. v. Yeatts, 99 F.2d 665 (CCA 4th, 1938); Associated Indemnity Corp. v. Davis, 45 F. Supp. 118 (D. C. M. D. Pa., 1942); Automobile Mut. Indemnity Co. v. Dupont, 21 F. Supp. 606 (D. C. D. Del., 1937); Utica Mut. Ins. Co. v. Beers Chevrolet Co., 250 App. Div. 348, 294 N. Y. Supp. 82 (1937). In the latter type of dispute the claim against the insured and the basis upon which the insurer seeks a suspension of its liability may all be part of a single controversy. In the instant case, the question of the father's legal right to maintain insurance on the use of his son's automobile goes to the validity of the contract. The fact that a claim or series of claims has been filed against the purported insured is of no significance in determining whether or not an insurance relationship ever existed.

Defendants' second contention that the judgment of the trial court denied them insurance protection to which they were entitled as a matter of law, requires careful analysis.

Under the stipulated facts, it is clear that no relationship of principal and agent existed between plaintiff and Klug, the insurance agent. Instead, it is clear that Klug was Lonnie's deceased son's agent. The representations that were made by Klug in the application for insurance were as agent of Lonnie's deceased son. Nowhere does it appear that Lonnie ever used the car or had any claimed interest in it. In fact, the stipulation of facts is to the contrary. It was not until after the accident in which his son was killed that Lonnie attempted to claim rights under the policy. Attached to and made a part of the insurance policy,

which was introduced as an exhibit, is the application for insurance prepared by Klug naming Lonnie as the insured.

Our decision involves the application of paragraph 766 of chapter 73 of the Illinois Revised Statutes, 1957, which provides that:

"No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor, of which a copy is attached to or endorsed on the policy, and made a part thereof. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company. This section shall not apply to policies of marine or transportation insurance."

In Hamberg v. Mutual Life Ins. Co. of New York, 322 Ill. App. 138, this court in construing the second sentence of the foregoing statute held that the word "or" after the word "deceive" should be construed to mean "and." See also La Penta v. Mutual Trust Life Ins. Co., 4 Ill.App.2d 60. For contrary holding see Campbell v. Prudential Ins. Co. of America, 16 Ill.App.2d 65.

In that the policy in the instant case contained the application for insurance as a part of it, the requirement set forth in the first sentence of the statute is complied with. The question then is whether the misrepresentation in the application voided the policy. Defendants argue that the representation as to ownership was not made with actual intent to deceive and did not materially affect the risk or hazard assumed

by the company. The exception as set forth in the second sentence of the statute is therefore controlling.

■ It is a matter of common knowledge that the rate frequency of accidents for drivers between the ages of sixteen and twenty-four is substantially greater than that for all drivers who are twenty-five years old or more. (National Safety Council 1956 and 1957 Report.) The risk or hazard of writing liability insurance in this group is, therefore, substantially greater. This in turn determines the premium rate to be charged, the extent of coverage which the insurer is willing to underwrite and the restrictions it may impose as to the conditions under which it will assume the risk. It is apparent that Klug in making the application in Lonnie's name sought to avoid revealing the fact that the owner of the car was only twenty years of age, thereby avoiding the possibility of the increased premium rate, possible limitation of coverage and other restrictions before the risk would be assumed.

Recently in the case of Allstate Ins. Co. v. Keller, 17 Ill.App.2d 44, we said:

"When we consider the millions of vehicles operating on our highways, and the ever increasing number of accidents, it is apparent that a contract of insurance is of vital concern to all who own and operate such vehicles, to their passengers, and to all who venture forth as mere pedestrians. It is not just an agreement limited to the parties but by its very nature has become one cloaked with a public interest. Integrity should be the essence of the agreement. The cost of insurance is based upon the ratio of the claims paid to the risk written. It is the owners and operators of vehicles upon whom the financial burden of maintaining such contracts must ultimately fall. The insurer must primarily depend upon the veracity of the insured in reporting an accident."

Likewise it may well be said that the insurer must depend on the veracity of the applicant, if it is to assume the risk and issue its policy.

■ It has been held that misrepresentation by an applicant for automobile insurance as to prior cancellation and frequency of accidents are matters that materially affect the risk insured against. Dragosvich v. Allstate Ins. Co., 2 Ill.App.2d 50; Klim v. Johnson and Allstate Ins. Co., 16 Ill.App.2d 484; Loving v. Allstate Ins. Co., 17 Ill.App.2d 230. If this is true, why wouldn't a higher accident ratio in an age class have the same effect?

There is only one Illinois case that treats the problem that we have before us. That is Mid-States Ins. Co. v. Brandon, 340 Ill. App. 470. The facts differ somewhat from those in the instant case but the issue involved is substantially the one that we have before us. The legal title to the car was held by the father although the enjoyment and use of the car was exclusively in his son, a minor. The policy was issued to the father based on an application in which he described himself as the sole owner. The son had a collision and the company sought a declaratory judgment avoiding the policy because of the misrepresentation of the identity of the "actual owner" of the automobile. The trial court dismissed the complaint and this court affirmed the decision of the trial court. The court, while quoting the second sentence of the Illinois statute heretofore cited, does not discuss its application to the principle that they announce in their conclusion. They in effect hold that the misrepresentation as to the actual ownership was immaterial and make the following statement at page 474:

"We think the rule is stated with clearness and precision by the author in Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Edition, vol.

449

6, part 1, sec. 3873, p. 537—Insurable Interest, which reads:

" 'The rule requiring possession by the insured of an insurable interest in the property forming the subject matter of the insurance, which prevails generally in casualty insurance, is not applicable to liability indemnity policies.

" 'The character of the insurance is quite different from insurance, against injury or loss, of the property insured by fire, theft, collision, or the like, where the insured is required to have some real interest in the property insured; in the case of liability insurance the risk and hazard insured against is not the injury or loss of the property named in the policy, but against loss and injury caused by the use of the property therein named, for which the insured might be liable, and the right of the insured to recover does not depend upon his being the holder, in fact, of either a legal or equitable title or interest in the property, but whether he is primarily charged at law or in equity with an obligation for which he is liable.' "

The principal cases relied upon, Kuntz v. Spence (Tex. Civ. App.), 48 S.W.2d 413, and Pauli v. St. Paul Mercury Indemnity Co., 4 N.Y.S.2d 41, are not in point. In the Kuntz case the named insured made a down payment and held title to the automobile subject to an incumbrance, and in the Pauli case the named insured had made a down payment and held equitable title subject to a conditional sales contract. The rationale of each of the opinions was that the owner of the legal or equitable title to an automobile, subject only to a lien securing the balance due on the purchase price, would not operate the automobile with less care than would a person who was the owner of the automobile free from incumbrance. This is clearly not the issue before us.

450

The other cases cited in support of this theory were Sly v. American Indemnity Co. of Galveston, Texas, 127 Cal. App. 202, 15 P.2d 522; Ocean Accident & Guarantee Corp. v. Bear, 220 Ala. 491, 125 So. 676; Pontius v. American Motorists' Ins. Co., 158 Wash. 264, 290 Pac. 850; Hunt v. Century Indemnity Co., 58 R. I. 336, 192 Atl. 799, and Commonwealth Casualty Co. v. Arrigo, 160 Md. 595, 154 Atl. 136. In the Hunt case the issue was the same as in the Pauli and Kuntz cases. In the Ocean Accident & Guarantee Corp. case, the court held that where the named insured in a policy of automobile liability insurance could be liable for injuries arising out of the use of the automobile, the insured has the legal right to maintain the policy and the benefits of the policy run to all who qualify as additional insureds under the omnibus clause, although the use of the automobile by the additional insured may not fall within the scope of the named insured's liability.

In the Sly case it was held that an omnibus provision in a policy of automobile liability insurance renders a provision avoiding the policy upon a transfer of interest from the named owner to another immaterial to the risk initially assumed by the company.

In the Pontius case the court held that the primary use by a wife of a car, although registered in the husband's name, was not fraud, concealment or conspiracy in procuring the insurance. The court said (p. 852):

"The use of the automobile was a community use, the damage judgment was a community obligation, and the insurance was insurance of the community against such an obligation."

In the Commonwealth Casualty Company case it was held that the holder of legal title to a vehicle is legally responsible for injuries arising out of its

451

use and may maintain liability insurance upon its general use by another and any warranty as to sole ownership is waived where the agent for the insurer has been informed of such general use by another.

It is apparent that none of these cases involve the precise issue that we have before us. The case of Didlake v. Standard Ins. Co., 195 F.2d 247, involves substantially the same facts as Mid-States Ins. Co. v. Brandon, supra, but the conclusion reached by the court was that the misrepresentation of the ownership of the car materially affected the risk insured against. There an adult friend of a minor nineteen years old took title to the automobile in question for the purpose of obtaining liability insurance. The court in holding that it was a material misrepresentation which avoided the policy said at p. 251:

"When an insurance company issues a policy of automobile liability insurance, providing for coverage of the named insured as owner, and containing an omnibus clause, it intends that the coverage of the named insured shall apply to the person who owns, possesses and controls the automobile, and that the omnibus clause shall apply only to third persons who use the automobile with the owner's and named insured's consent, given by the owner in the exercise of discretion and judgment. It is true that the insurance company, when it issues such a policy, has no knowledge with respect to third persons who may use the automobile with the permission of the owner and named insured, but it is a reasonable assumption that ordinarily the major use of the automobile will be by the owner and the named insured. Hence, it seems to us that the age and driving habits of the owner and named insured and whether he possesses normal mental and physical faculties are facts which should be, and are, considered by an insurance company in

determining whether it will assume the risk to be covered by the policy.

"Where the application for the insurance is made by the true owner and he is to be designated in the policy as the named insured, the insurance company, before issuing the policy, may investigate the age and other facts with respect to such owner which it deems important in determining whether to issue the policy, but where the fact with respect to ownership is misrepresented and the identity of the true owner is concealed with the purpose of obtaining coverage for the true owner under the omnibus clause, no such opportunity is present.

"The Insurance Company, like many liability insurance companies today, was not willing to issue an automobile insurance policy covering minors. The reason is obvious—the higher accident rate of persons in the age group between 16 and 21. . . ."

In 33 A.L.R.2d 951, there is a discussion of the underlying principle as involved in the Didlake v. Standard Ins. Co., supra, and Mid-States Ins. Co. v. Brandon, supra. It is concluded "the prevailing view on this point would seem to be that such a misrepresentation is material to the risk assumed by the insurer," as stated in the Didlake case. See also cases cited in support thereof.

█ It appears to us that the conclusion in the Didlake case is in line with the principle announced in Dragosvich v. Allstate Ins. Co., supra, Klim v. Johnson and Allstate Ins. Co., supra, and Loving v. Allstate Ins. Co., supra. We conclude, therefore, that the misrepresentation in the application for insurance in the instant case was made with intent to deceive and materially affects the risk and hazard assumed by plaintiff as set forth in the second sentence of paragraph 766 of chapter 73 of the Illinois Revised Stat-

453

utes. We follow the principle in Didlake v. Standard Ins. Co., supra, as stated heretofore rather than that of Mid-States Ins. Co. v. Brandon, supra.

Judgment affirmed.

McCORMICK, P. J. and SCHWARTZ, J., concur.