# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Direct Auto Insurance Co. v. Beltran**, 2013 IL App (1st) 121128

---

| | |
|---|---|
| Appellate Court Caption | DIRECT AUTO INSURANCE COMPANY, Plaintiff-Appellant, v. ELIA BELTRAN, MARIO BELTRAN, ARACELI BELTRAN, ACUITY INSURANCE COMPANY, as subrogee of Alice Obermann, George Obermann, and Mark Obermann, ALICE OBERMANN, and GEORGE OBERMANN, Defendants-Appellees (Crescend Technologies LLC and Lutheran General Hospital, Defendants). |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-1128 |
| Filed | September 27, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an insurer's action seeking a declaratory judgment that the automobile liability policy issued to defendant was rescinded and null and void *ab initio*, the trial court properly denied plaintiff's motion for summary judgment and granted defendants' motion for summary judgment based on the finding that the policy provided coverage, notwithstanding the facts that the named insured's application listed her gender as "M," even though she was a female, it stated that she had an international driver's license, that only one driver resided at her residence and that there would be only one driver of the insured vehicle, since the named insured stated in her deposition that she did not know how to drive and that she purchased the insured vehicle for her brother to drive to work, the facts that the named insured's application was taken over the telephone and was not signed by the named insured, and under the circumstances, any misrepresentations were not material, because the number of regular drivers was not misstated, the chances of the events insured against were not substantially increased, and most importantly, there was no indication the named insured intentionally misrepresented any facts. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-33780; the Hon. LeRoy Martin, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Brianne M. Connell, of James P. Newman & Associates, of St. Charles, for appellant. |
| | James P. Marsh and Rachael A. Gould, both of Momkus McCluskey, LLC, of Lisle, for appellees. |
| Panel | PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion. |
| | Justices Palmer and Taylor concurred in the judgment and opinion. |

**OPINION**

¶ 1 Plaintiff Direct Auto Insurance Co. (DAI) filed an action seeking a declaratory judgment, arguing that: (1) an insurance policy it issued to defendant Elia Beltran was rescinded and null and void, *ab initio*; (2) that DAI owed no duties under the policy to any of the defendants; and (3) that defendants were not entitled to any recovery under the policy. DAI and defendant Acuity Insurance Company (Acuity), as subrogee of Alice Obermann, George Obermann, and Mark Obermann, filed cross-motions for summary judgment. The trial court granted Acuity's motion and denied DAI's motion, finding coverage. DAI filed a motion to reconsider, which the trial court denied. DAI appeals, and we affirm.

¶ 2 BACKGROUND
¶ 3 I. The Parties and The Policy
¶ 4 DAI is an insurance company with its principal place of business in Chicago, Illinois. DAI is duly licensed to underwrite policies for automobile insurance, and to sell such policies and coverage to members of the general public. Elia Beltran (Elia), Mario Beltran (Mario), and Araceli Beltran (Araceli) are Illinois residents. Elia speaks limited English and her Spanish literacy is limited by the fact that she cannot write in Spanish.

¶ 5 DAI received an application for automobile insurance from Northwest Insurance

Network, Inc. (NIN), an insurance broker.[1] The application listed Elia as the applicant. The application lists Elia's gender as "M," despite Elia being a woman. The application states that Elia has an international driver's license. However, Elia testified in her deposition that she does not know how to drive an automobile. Elia owns a 2006 Ford Freestyle SE motor vehicle (the Elia vehicle). Elia purchased the Elia vehicle with the intent that Mario, her brother, would use it to drive her to and from work. Elia did not sign the application, and instead, the applicant signature lines bear the notation "T/O."[2] After receiving the application, DAI issued a policy of insurance to Elia (the DAI policy). The DAI policy covered bodily injury, property damage, medical payments, uninsured motorist, and physical damage. The DAI policy had an effective date of November 23, 2008.

¶ 6 Acuity is a Wisconsin mutual insurance company, licensed and authorized to write insurance in the State of Illinois. Alice Obermann (Alice), George Obermann (George), and Mark Obermann (Mark) are Illinois residents. "Alice Obermann, George Obermann, and Mark Obermann had in force a certain policy of insurance with Acuity Insurance Company [(the Acuity policy)] which provided, among other things, automobile coverage for payment of property damage and medical payments incurred as a result of an automobile collision."

¶ 7 The other defendants, Crescend Technologies, LLC (Crescend), an Illinois limited liability corporation, and Lutheran General Hospital (Lutheran), an Illinois not-for-profit entity, did not participate in this appeal.


¶ 8                          II. The Underlying Action

¶ 9 The declaratory judgment action in the case at bar arises from an underlying subrogation action filed by Acuity, as subrogee of Alice, George, and Mark. Acuity filed a two-count complaint in the circuit court of Cook County, alleging negligence against Mario and negligent entrustment against Elia. Acuity states in the underlying complaint that the lawsuit "is a subrogation action wherein the real parties in interest are Acuity Insurance Company and Mark Orbermann" with regard to the negligence claim, and "is a subrogation action wherein the real parties in interest are Acuity Insurance Company and Alice Obermann, George Obermann, and Mark Orbermann" with regard to the negligent entrustment claim.

¶ 10 The underlying complaint alleges the following facts. On or about December 15, 2008, Mario was operating the Elia vehicle, and Mark was operating his vehicle, which was covered by the Acuity policy. Mario had a duty to operate the Elia vehicle in a safe and reasonable manner, and Mario breached that duty. The two vehicles collided, "causing property damages to [Mark's] vehicle and injuries to [Mark] requiring medical treatment." The complaint further alleges that Elia placed the Elia vehicle "in the care and custody of

---

[1]NIN is not a party to this lawsuit. In her affidavit, an NIN representative refers to NIN as an "independent broker." In the complaint, DAI refers to NIN as an "independent insurance agency."

[2]Defendant Acuity Insurance Co. states in its brief that "T/O" "indicates that [the application] was made over the telephone." The application has three signature lines. Two contain the notation "T/O," and the third, which states "Received by," bears a signature.

[Mario] knowing that his ability to drive the vehicle and his reliability were such that she was placing a careless, negligent, reckless, incompetent and unsafe driver upon the streets when she knew, or in the exercise of ordinary care, should have known, that by doing so, she might or could cause injury to other persons on the public way." Pursuant to the Acuity policy, Acuity "paid policy benefits in the amount of $10,000.00 for medical payments on behalf of [Mark] and property damage payments on behalf of Alice Obermann, George Obermann, and Mark Obermann in the amount of $9,738.01, including towing charges and storage and a $500.00 deductible."

III. The Declaratory Action

A. The Complaint

DAI filed a declaratory judgment action, alleging that Elia made material misrepresentations in her application for insurance, and as a result, there was no coverage. DAI alleges the following facts: NIN was an "independent insurance agency" acting as Elia's agent for the purpose of securing insurance. On or about November 24, 2008, Elia, through NIN, submitted an electronic application for insurance to DAI. The DAI policy was issued on November 28, 2008, based on the application submitted by NIN. Elia was the named insured under the DAI policy, and owned the Elia vehicle.

The DAI policy was subject to the following terms and conditions:

"**4. Fraud and Misrepresentation.** Statements contained in the application for insurance are deemed to be representations relied upon by [DAI] in issuing this policy. In the event that any representation contained in the application is false, misleading or materially affects the acceptance or rating of risk by [DAI], by either direct misrepresentation, omissions, concealment of facts or incorrect statements, then coverage for the accident or loss in question shall not be provided by [DAI] and/or this policy shall be null and void and of no benefit whatsoever from its inception.

\* \* \*

**17. Declarations.** By acceptance of this policy the named insured agrees that the statements and representations contained in the Application have been made by him/her or on his/her behalf and said statements are representations and the statements in the Application and in any subsequent application or questionnaire accepted by [DAI] are offered as an inducement to [DAI] to issue or to continue this policy and that this policy is issued and continued in reliance upon the truth of such statements and representations and that this policy embodies all agreements existing between himself/herself and [DAI] relating to this insurance."

The application requests a list of the known drivers of the Elia vehicle. The application lists Elia as a driver and states that "[a]pplicant warrants there are no other drivers other than those listed below." No other drivers are so listed. The application contains a paragraph stating that the applicant acknowledges that she has read and attests that all answers provided are true.

On or about December 15, 2008, Mario was operating the Elia vehicle, and at this time,

the Elia vehicle "came into contact with the person or property" of Alice and Mark. As a result of the collision, Acuity, as subrogee of Alice and Mark, filed the underlying subrogation action against Mario and Elia.

¶ 17 DAI alleges that Elia, "either individually or through her agent, intentionally misled DAI as to the other drivers in her residence." DAI alleges that, had it known that the Elia vehicle was to be operated by drivers other than Elia, "said information would have materially affected DAI's decision to issue the DAI policy" to Elia, and that it would not have issued the DAI policy as written. DAI further alleges that, due to Elia's material misrepresentation, the DAI policy is null and void, *ab initio*. DAI rescinded the policy and returned Elia's full premium on or about December 29, 2008, and owes no duty to defend or indemnify Mario and Elia.

¶ 18 DAI asks the trial court to declare: (1) that as a result of Elia's material misrepresentations, the DAI policy is "rescinded and null and void, *ab initio*, and of no benefit whatsoever"; (2) that DAI owes no duty under the DAI policy to defend or indemnify Elia and Mario with regard to any claim or lawsuit made by them or the other defendants as herein named as a result of the vehicle collision; (3) that none of the defendants are entitled to recovery under the DAI policy for or in connection with any claim or lawsuit resulting from the vehicle collision; and (4) "any such other and further relief" that the trial court "deems just and appropriate in the circumstances."

¶ 19 B. Answer and Default

¶ 20 Defendants Acuity, Alice, George, and Mark filed an answer and counterclaim to the declaratory judgment action. The counterclaim also sought a declaratory judgment requesting: (1) the trial court to "declare and adjudicate the rights, obligations, and liabilities of the parties to this suit with respect to the DAI policy"; (2) a finding of coverage for indemnity of Mario and Elia for the underlying action under the DAI policy; (3) a finding that DAI owes a duty to defend Mario and Elia in the underlying action under the DAI policy; (4) a finding that DAI owes a duty to indemnify Mario and Elia in the underlying action under the DAI policy; (5) that Acuity is entitled to judgment in its favor; and (6) that Acuity is entitled to any other or further relief that the trial court deems just and equitable.

¶ 21 The counterclaim alleges that the DAI policy contains the following term:

"**Persons Insured.** The following are Insured under Part I:

(a) With respect to the owned automobile;

(1) the named insured, or

(2) any other person using such automobile to whom the named insured has given permission, provided the use is within the scope of such permission."

Acuity alleges that Elia gave Mario permission to drive the Elia vehicle, and was therefore an insured under the DAI policy.

¶ 22 Defendants Elia, Mario, Araceli, Crescend, and Lutheran did not file answers. DAI filed motions for default against those defendants, and the trial court granted the motions, finding them in default.

C. Motions for Summary Judgment

¶ 24 DAI and Acuity, as subrogee of Alice, George, and Mark, filed cross-motions for summary judgment seeking judgment in their favor in their respective declaratory judgment lawsuits.

¶ 25 1. DAI's Motion

¶ 26 DAI argues that Elia made an intentional material misrepresentation, and as a result, the DAI policy is void, *ab initio*. DAI attached Elia's deposition, at which she was aided by a Spanish interpreter. She testified that she and Mario lived in the same apartment on the day before the effective date of the DAI policy. DAI argues that Elia's failure to disclose other drivers in her household constituted a material misrepresentation that allowed DAI to rescind the policy. DAI argues that even if Mario, an undisclosed driver who lived with Elia at the time the DAI policy was issued, was a permissive user under the DAI policy, no coverage existed because Elia made material misrepresentations in her application for insurance, and thus, the policy was void, *ab initio*. DAI argued that the policy was void, and that, unlike a policy defense in which the policy still exists, if a policy is void due to a material misrepresentation, it is treated as having never existed in the first place.

¶ 27 DAI asserted, through the affidavit of DAI claims manager Michael Torello, that it had returned Elia's policy premium to NIN. DAI also argued that, because Elia, Mario, Araceli, Crescend, and Lutheran were found to be in default, all well-pled allegations are considered admitted against them.

¶ 28 Concerning NIN's role in submitting the application for the DAI policy, DAI attached the affidavit of NIN representative Linda Robnett, in which she attested to the following.[3] NIN is not an agent of DAI, but is an independent broker. DAI exercises no control over NIN and does not pay NIN. NIN sells products from "a variety of insurers, not just [DAI]." NIN receives a commission, which is added to the premium paid by Elia, the insured. NIN did not contact DAI until Elia "chose [DAI] as her insurer from a host of insurers available," and NIN received Elia's application for insurance through an automobile dealership. "NIN *records* do not reflect Elia Beltran or Elia Beltran's agent at the dealership disclosing Mario Beltran as a member of Elia Beltran's household." (Emphasis added.)

¶ 29 The trial court denied DAI's motion for summary judgment.

¶ 30 2. Acuity's Motion

¶ 31 Acuity, as subrogee of Alice, George, and Mark, filed a motion for summary judgment seeking a favorable disposition of its counterclaim for a declaratory judgment. The motion stated the following. In DAI's answers to Acuity's interrogatories, DAI stated that NIN's

---

[3]Robnett's affidavit does not assert that her statements are based upon personal knowledge, nor does it attach sworn or certified copies of any documents referred to in the affidavit, as required by Illinois Supreme Court Rule 191(a) (eff. July 1, 2002).

commission is included in the premium Elia paid for the DAI policy. Acuity attached a letter from DAI to NIN, in which DAI informed NIN that the DAI policy was null and void, *ab initio*, because of material misrepresentations made by Elia in her application. The letter began with "Dear Agent," and stated that DAI would credit NIN's "agent statement."

¶ 32    Acuity also attached Elia's deposition, at which she testified to the following: Elia was unable to recall the name of the dealership where she purchased her vehicle. Upon purchasing the vehicle, someone at the dealership informed Elia that the vehicle came with insurance. Elia does not know how to drive, and she purchased the vehicle with the intent that Mario would operate it. Elia testified that someone at the dealership asked Elia about whether other people in her household would drive the vehicle:

> "Q. Did you inform this individual [at the dealership] that Mario resided with you?
>
> A. Yes.
>
> Q. What did he say when you informed him that Mario resided with you?
>
> A. 'No, that's okay. That's okay.'
>
> Q. He told you 'That's okay'?
>
> A. Since I tell [*sic*] him that I don't know how to drive and that my brother is going to drive the [Elia vehicle], they said, 'It's okay.' "

Elia testified that she did not speak with NIN to "apply [for] or obtain insurance for the [Elia vehicle]," and that she did not contact NIN until the vehicle collision. Elia testified that the signature on the NIN application was not hers. At the time of the accident, Mario obtained Elia's permission to operate the Elia vehicle.

¶ 33    Acuity argues that the NIN application listed Elia's gender as "M," despite the fact that Elia is a woman. The application further lists Elia as carrying an international driver's license, but Elia does not have a driver's license.

¶ 34    Acuity argues that DAI failed to, and cannot, prove that Elia made a material misrepresentation necessary to declare the policy void, *ab initio*, because Elia did not make a false statement and, even if she had, she had no intent to deceive or materially affect the acceptance of the risk or hazard assumed by DAI. Acuity next argues that, even if Elia made a material misrepresentation, DAI failed to properly rescind the DAI policy and has waived any opportunity to do so. Acuity further argues that DAI is prevented from rescinding the DAI policy, both by statute and by public policy.

¶ 35    Finally, Acuity argues that although independent insurance brokers like NIN can have dual agencies to both insurers and insured, the facts of the case indicate that NIN was an actual or apparent agent of DAI as a matter of law. As a result, NIN's actions and knowledge are imputed to DAI. Acuity argues that because of "NIN's knowledge that Elia could not drive and that Mario was a resident driver," DAI is imputed to have this knowledge and could not claim that Elia made a misrepresentation.

¶ 36    The trial court granted Acuity's motion for summary judgment.

¶ 37                                    D. Motion to Reconsider

¶ 38       DAI filed a motion to reconsider the trial court's denial of its motion for summary judgment and its granting of Acuity's motion for summary judgment. DAI asserts that the trial court erred in applying the law because defendants did not counter facts attested to in the affidavits DAI used to support its motion for summary judgment. DAI asserts that these affidavits were sufficient to establish that Elia made a material misrepresentation, and thus it was entitled to summary judgment. DAI also attached a printout analyzing the difference in the cost of the premium had drivers in addition to Elia been disclosed in her application. The printout states that, had Elia listed on the application that other drivers resided with her, her premium would have been four times greater.

¶ 39       The trial court issued a written order denying DAI's motion to reconsider. The trial court concluded that Elia made no intentional misrepresentation. The trial court further concluded that "[t]here was one licensed, male driver in [Elia's] residence at the time of the application [Mario]. If the application had been completed correctly, with the name Mario instead of Elia, Mario would not have been required to disclose that Elia lived in the residence with him because she is not a licensed driver, according to the application form questions." The trial court found no evidence of "any other indicators that might have affected the risk assumed negatively, such as a negative driving record, etc." DAI appeals.


¶ 40                                          ANALYSIS

¶ 41       DAI raises two issues on appeal: (1) whether the trial court erred in granting Acuity's motion for summary judgment and denying DAI's motion for summary judgment; and (2) whether the trial court erred in denying DAI's motion to reconsider. For the following reasons, we affirm.


¶ 42                                    I. Standard of Review

¶ 43       Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49. Summary judgment is a "drastic means of disposing of litigation and, therefore, should be granted only when the right of the moving party is clear and free from doubt." *Mashal*, 2012 IL 112341, ¶ 49. Where a case is decided through summary judgment, our standard of review is *de novo*. *Pielet v. Pielet*, 2012 IL 112064, ¶ 30. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). "A defendant moving for summary judgment bears the initial burden of proof." *Siegel Development, LLC v. Peak Construction, LLC*, 2013 IL App (1st) 111973, ¶ 109. "The defendant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing ' "that there is an absence of evidence to support the nonmoving party's case." ' " *Siegel*, 2013 IL App (1st) 111973, ¶ 109 (quoting *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Where a plaintiff has moved for summary judgment, the materials relied upon must establish the validity of the plaintiff's

factual position on all the contested elements of the cause of action. *General Motors Corp. v. Douglass*, 206 Ill. App. 3d 881, 885 (1990).

¶ 44 Regarding the second issue, "[a] ruling on a motion to reconsider is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion." *Robidoux v. Oliphant*, 201 Ill. 2d 324, 347 (2002). "An abuse of discretion will be found where no reasonable person would take the view adopted by the circuit court." *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 21.

¶ 45                                  II. Summary Judgment Motions

¶ 46 DAI argues that the trial court erred when it granted defendants' motion for summary judgment and denied DAI's motion for summary judgment. DAI argues that Elia made a material misrepresentation in her application for the DAI policy, and as a result, DAI properly rescind the DAI policy.

¶ 47 Section 154 of the Illinois Insurance Code (the Code) states the following:

"No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive *or materially affects either the acceptance of the risk or the hazard assumed by the company*." (Emphasis added.) 215 ILCS 5/154 (West 2008).

"The statute establishes a two-prong test to be used in situations where insurance policies may be voided: the statement must be false and the false statement must have been made with an intent to deceive or must *materially* affect the acceptance of the risk or hazard assumed by the insurer." (Emphasis added.) *Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 464 (2003). "A misrepresentation in an application for insurance is a statement of something as a fact which is untrue and *affects the risk taken by the insurer*." (Emphasis added.) *Northern Life Insurance Co. v. Ippolito Real Estate Partnership*, 234 Ill. App. 3d 792, 801 (1992) (citing *Weinstein v. Metropolitan Life Insurance Co.*, 389 Ill. 571, 577 (1945)). Whether an insured's statements are *material* "is determined by whether reasonably careful and intelligent persons would have regarded the facts stated as substantially increasing the chances of the events insured against, *so as to cause a rejection of the application*." (Emphasis added.) *Northern Life*, 234 Ill. App. 3d at 801.

¶ 48 In establishing the materiality of a misrepresentation, an insurer may rely on the underwriter's testimony or the testimony of its employees. *Northern Life*, 234 Ill. App. 3d at 802. "Ordinarily, the materiality of a misrepresentation is a question of fact; however, where the misrepresentation is of such a nature that all would agree that it is or is not material, the question is appropriate for summary judgment." *Northern Life*, 234 Ill. App. 3d at 802.

¶ 49 First, DAI asserts, without argument, that the first prong of the rescission test has been satisfied because Elia made a false statement. DAI states that although Elia's application lists

-9-

no other drivers in her household, she testified in her deposition that she and Mario lived in the same household. DAI argues that Elia also testified that Mario would drive the Elia vehicle and therefore Elia herself "indicated that the information in the application was false" because she failed to disclose a licensed driver at her residence *in addition to herself*.

¶ 50    However, Elia's testimony, which is unrebutted, unequivocally states that *she herself was not a licensed driver* and that she would not operate the Elia vehicle. Elia testified that she purchased the Elia vehicle with the intent that Mario would drive it. Elia did not testify that she was a licensed driver or that there were licensed drivers *in addition to Mario* residing with her. Therefore, the number of drivers covered under the policy is the same as the number of drivers disclosed by Elia: one. In effect, Elia was given coverage seeking coverage for Mario for a nonowned automobile.

¶ 51    The discrepancy lies in the name of the insured driver. The application states that a male named Elia Beltran is the insured driver, when in fact (1) a male named Mario Beltran was the intended insured driver and (2) Elia is a female.

¶ 52    DAI cites various cases to argue that Elia's misrepresentation was material. In *Styzinski v. United Security Life Insurance Co. of Illinois*, 332 Ill. App. 3d 417 (2002), the insurer filed a counterclaim asserting that the insured made a material misrepresentation on his application for medical insurance, and asked the trial court to find that the policy be rescinded. *Styzinski*, 332 Ill. App. 3d at 418. The insured filled out an application for insurance, and answered "no" to the following question: " 'Does any person named above contemplate or has within the last two years been engaged in the following activities: *** Motorcycle Driving or Racing ***?' " *Styzinski*, 332 Ill. App. 3d at 419. After the insurer issued the policy to the insured, the insured was injured in a motorcycle accident. *Styzinski*, 332 Ill. App. 3d at 419.

¶ 53    The insurer filed a motion for summary judgment on its counterclaim and attached the depositions of the insured and the insurer's underwriting manager. In his deposition, the insured testified that at the time he completed the application for insurance, he had a license to drive a motorcycle and owned a "street bike" and an "off-road bike." *Styzinski*, 332 Ill. App. 3d at 420. The insured, a mechanic, further testified that he repaired "approximately a dozen motorcycle or dirt bikes per year and test-drove all of them." *Styzinski*, 332 Ill. App. 3d at 420. The insured testified that he had operated dirt bikes and motorcycles during the two-year period prior to submitting the application. *Styzinski*, 332 Ill. App. 3d at 420. However, the insured testified that he operated the dirt bikes and motorcycles "off-road," and at the time he submitted the application, he had not operated a motorcycle on the highway during the prior two years and he had no intention of operating a motorcycle on the streets in the future. *Styzinski*, 332 Ill. App. 3d at 420. The insurer's underwriting manager testified in his deposition that in his capacity as underwriting manager, he "evaluated the risks presented by insurance applications, determined whether a policy should be issued, and if so, whether it should be issued with an endorsement limiting or changing the terms of coverage." *Styzinski*, 332 Ill. App. 3d at 420-21. The underwriting manager testified that had the insured answered "yes" to the motorcycle question on the application, the insurer "would have asked follow-up questions regarding [the insured's] use of motorcycles and issued an elimination endorsement excluding coverage for motorcycle injuries." *Styzinski*, 332 Ill. App. 3d at 421.

The trial court granted summary judgment, and this court affirmed, finding that the insurer *would not have provided coverage for motorcycle injuries* had the insured revealed that he test-drove motorcycles during the two years prior to submitting the application.

¶ 54    In *Northern Life*, the insurer brought suit to rescind six life insurance policies issued to the insured, arguing that the insured materially misrepresented the condition of his health when he applied for life insurance. *Northern Life*, 234 Ill. App. 3d at 793-94. When the insured completed the application for the sixth insurance policy, he disclosed the fact that he suffered from hemophilia and disclosed all of his treatments and physicians for the preceding five years, but he failed to disclose that he had recently suffered a weight loss of approximately 20 pounds. *Northern Life*, 234 Ill. App. 3d at 794-95. The insured was subsequently diagnosed with AIDS. *Northern Life*, 234 Ill. App. 3d at 795. The insured's physician explained to him that no cure for AIDS existed and that he would eventually die from it. *Northern Life*, 234 Ill. App. 3d at 795. After he was diagnosed with AIDS, the insured completed an amendment to the application for the sixth policy, in which the insured verified that the information contained in the application as amended was true and correct, that he continued to be in good health, and had not suffered any sickness or consulted or attended by a physician. *Northern Life*, 234 Ill. App. 3d at 795.

¶ 55    The trial court found that the insured made material misrepresentations with regard to the sixth policy, holding that the insured had an intent to deceive the insurer regarding the condition of his health, and it granted summary judgment on the sixth policy. *Northern Life*, 234 Ill. App. 3d at 796. On appeal, this court found that "the record indicates that [the insurer] did indeed rely upon representations made by [the insured] in the amendment." *Northern Life*, 234 Ill. App. 3d at 802. The insurer's chief underwriter testified "that disclosures made by [the insured] in the amendment would be considered in evaluating whether [the insurer] could accept the risk." *Northern Life*, 234 Ill. App. 3d at 802. The chief underwriter testified that, had the insured disclosed on the amendment that he had been diagnosed with AIDS, the insurer "would have *declined coverage* because AIDS was then, and is now, *uninsurable*." (Emphases added.) *Northern Life*, 234 Ill. App. 3d at 802. Furthermore, a physician testified that he was familiar with insurance industry practices, and opined that the insured's misrepresentation was material. *Northern Life*, 234 Ill. App. 3d at 802. This court found that the insured misrepresented his condition of health on the amendment because he did not disclose that he had been diagnosed with AIDS and stated in his application that he continued to be in good health. *Northern Life*, 234 Ill. App. 3d at 802. This court determined that "reasonably careful and intelligent persons would regard the diagnosis of AIDS, an uninsurable condition, substantially increasing the risk assumed by [the insurer]," and thus "it was not improper for the circuit court to hold that [the insured] materially misrepresented his condition of health." *Northern Life*, 234 Ill. App. 3d at 802. This court further concluded that the insured's misrepresentation was deliberate and intentional because the insured learned new facts that rendered portions of his application no longer true, but signed the amendment averring that the information contained in the application was true. *Northern Life*, 234 Ill. App. 3d at 803 (citing *Stipcich v. Metropolitan Life Insurance Co.*, 277 U.S. 311, 316 (1928)). As a result, this court affirmed the trial court's grant of summary judgment with regard to the sixth policy. *Northern Life*, 234 Ill.

App. 3d at 803-04.

¶ 56    Finally, in *Ratliff v. Safeway Insurance Co.*, 257 Ill. App. 3d 281 (1993), the insured filed a declaratory judgment action seeking a declaration that her son was insured under an automobile insurance policy and that "the protection of the [insurance policy] extended to any claims arising out of [the son's] operation of the [motor vehicle] described in the policy." *Ratliff*, 257 Ill. App. 3d at 282. In 1984, the insured applied for an automobile insurance policy with the insurer. *Ratliff*, 257 Ill. App. 3d at 282. The insured applied for the insurance policy through "an independent agency [the independent agency] selling policies for several insurance companies." *Ratliff*, 257 Ill. App. 3d at 282. In 1986, after receiving a renewal notice, the insured called the independent agency to renew the insurance policy. *Ratliff*, 257 Ill. App. 3d at 282. The insured answered several questions and stated that "none of the information from the previous year had changed; that she was the main driver of the automobile; that her son *** was an 'occasional' driver of the automobile; and that there were no 'regular' drivers of the automobile under the age of 25." *Ratliff*, 257 Ill. App. 3d at 282. The insured "never saw, read, or signed the application for renewal, and did not know whose signature appears on it." *Ratliff*, 257 Ill. App. 3d at 282. "The application for [the insured's] 1986 automobile insurance, which was completed by [the independent agency], states in part that 'APPLICANT WARRANTS THAT THERE ARE NO OTHER DRIVERS IN THE HOUSEHOLD, OTHER THAN THOSE LISTED BELOW.' " *Ratliff*, 257 Ill. App. 3d at 282-83. The application did not list the insured's son as a driver of the vehicle. *Ratliff*, 257 Ill. App. 3d at 283. The applicant signature line was blank and the applicant's agent signature line contained an illegible signature. *Ratliff*, 257 Ill. App. 3d at 283.

¶ 57    On December 27, 1986, the insured's son was operating the vehicle with the insured's permission and was "involved in an accident with another vehicle." *Ratliff*, 257 Ill. App. 3d at 283. At the time of the accident, the insured's son was 20 years old and "had always lived with [the insured]." *Ratliff*, 257 Ill. App. 3d at 283. The insured's son drove the vehicle approximately twice a week, and he always had the insured's permission to drive the vehicle. *Ratliff*, 257 Ill. App. 3d at 283. The driver of the other vehicle filed suit against the insured and her son, and the insurer refused to provide coverage or provide a defense to the insured and her son. *Ratliff*, 257 Ill. App. 3d at 283. In response, the insured and her son filed a declaratory action against the insurer. *Ratliff*, 257 Ill. App. 3d at 283. The case proceeded to a bench trial and at the close of the insured's case, the insurer made a motion for a directed finding. *Ratliff*, 257 Ill. App. 3d at 283. The trial court granted the motion, finding that: (1) the insured's son was not contemplated as an insured in the policy; (2) disclosure of the insured's son as a driver would have presented an increased risk to the insurer; (3) the complaint in the underlying action arising out of the accident could not state a cause of action against the insured solely on the basis of ownership of the vehicle; and (4) the insurance policy was void. *Ratliff*, 257 Ill. App. 3d at 283.

¶ 58    On appeal, the only issue before this court was whether the trial court's finding that "the contract of automobile insurance between [the insured] and [the insurer] did not provide coverage for [the insured's son] was against the manifest weight of the evidence." *Ratliff*, 257 Ill. App. 3d at 284. This court stated that there were three circumstances under which a finding would be against the manifest weight of the evidence: "(1) if [the independent

-12-

agency] was acting as [the insurer's] agent when it filled out the application for renewal of insurance; (2) if the non-disclosure on the application form of [the insured's son] as another driver of the insured automobile was not material and did not affect [the insurer's] risk; or (3) if the insurance contract was ambiguous as to [the insured's son's] coverage." *Ratliff*, 257 Ill. App. 3d at 284.

¶ 59    This court found that "the nondisclosure of a 20-year-old driver residing in the same household is a misrepresentation that materially affects the risk assumed by the insurer." *Ratliff*, 257 Ill. App. 3d at 288. This court stated that " '[i]t is a matter of common knowledge that the rate frequency of accidents for drivers between the ages of sixteen and twenty-four is substantially greater than for all drivers who are twenty-five years of age or more.' " *Ratliff*, 257 Ill. App. 3d at 288 (quoting *Western States Mutual Automobile Insurance Co. v. May*, 18 Ill. App. 2d 442, 448 (1958), *overruled by Sobina v. Busby*, 62 Ill. App. 2d 1 (1965)). This court concluded that, had the insured disclosed the presence of her son as a driver in her household, his age, and the amount he drove the vehicle, the insurer "certainly" would have reassessed the risk it was assuming. *Ratliff*, 257 Ill. App. 3d at 288. This court stated that "the materiality of the non-disclosure [was] confirmed by the stipulation in the record that *** almost a month after the accident, [the insured] requested that [her son] be added to her policy, and that [the insurer] charged an additional $320 to add him." *Ratliff*, 257 Ill. App. 3d at 288-89.

¶ 60    We find these cases distinguishable. In *Styzinski*, the insurer's underwriter testified that the insurer would have specifically excluded coverage for motorcycle injuries had the insured provided accurate responses. *Styzinski*, 332 Ill. App. 3d at 421. In *Northern Life*, the insured had been diagnosed with AIDS and intended to misrepresent. *Northern Life*, 234 Ill. App. 3d at 802. The insurer's underwriter stated that, had the insured disclosed his diagnosis, the insurer would have denied coverage "because AIDS was then, and is now, *uninsurable*." (Emphasis added.) *Northern Life*, 234 Ill. App. 3d at 802. In these two cases, the misrepresentations were material because the insurers would have denied coverage had the insureds not made their misrepresentations. In the case at bar, DAI stated that it would not have issued the policy *as written*, and that Elia's premium would have been higher. In addition, in its motion to reconsider, DAI submitted a document estimating what Elia's premium *would have been* had DAI known that other potential drivers lived with Elia. Therefore, DAI cannot argue that it would have found Elia uninsurable had it known that she lived with other drivers.

¶ 61    In *Ratliff*, both the insured and her son operated the vehicle, despite the insured's application disclosing only one driver. *Ratliff*, 257 Ill. App. 3d at 282-83. The risk insured against increased because the vehicle was regularly driven by twice as many people as were listed on the policy. *Ratliff*, 257 Ill. App. 3d at 288. However, in the case at bar, Elia, did not operate the Elia vehicle, despite being the named insurer. Elia testified in her unrebutted deposition that only Mario operated the Elia vehicle, and, thus, the number of drivers listed

on the application matched the true number of drivers.[4]

¶ 62        DAI argues that Elia's misrepresentations were material because the "status, number and character of the persons who are likely to be driving the [vehicle] with the owner's permission" are relevant to the risk. *Government Employees Insurance Co. v. Dennis*, 90 Ill. App. 2d 356, 365 (1967). DAI's argument rests on the "number" of drivers likely to be driving the Elia vehicle, and is premised on the assumption that Mario was a driver *in addition to* Elia. DAI relies on Elia's deposition to prove that Mario lived with Elia on the effective date of the DAI policy, and thus that Elia had additional drivers in her home. However, Elia's deposition repeatedly states that Elia cannot and does not drive, and that she purchased the Elia vehicle with the intention that Mario would drive it. Therefore, Elia's deposition indicates that there was only one driver in her residence. As a result, there was no misrepresentation that "substantially increas[ed] the chances of the events insured against." *Northern Life*, 234 Ill. App. 3d at 801. The application stated that only one driver of the Elia vehicle resided at Elia's residence, and although the application listed this person as Elia, the fact that the true driver was in fact Mario did not increase the risk DAI insured against. The number of drivers likely to be driving the Elia vehicle was one. As we stated above, the number of drivers disclosed on the application matches the number of drivers who actually drove the Elia vehicle. Therefore, any misrepresentation by Elia was not material because she did not misstate the number of regular drivers of the Elia vehicle. *Dennis*, 90 Ill. App. 2d at 365. Nor did the misrepresentation "substantially increas[e] the chances of the events insured against." *Northern Life*, 234 Ill. App. 3d at 801. Most importantly, there is no showing that Elia intentionally misrepresented the facts. The policy should have been classified as a nonowned vehicle policy with an increase in premium.

¶ 63        In its motion for summary judgment, DAI relies on the affidavits of its claims manager and an NIN employee to support its arguments. DAI argues that the affidavits sufficiently establish that Elia's misrepresentation was material. DAI relies on its claims manager's affidavit to assert that "the [DAI] policy would not have been issued as written or *would not have been issued at all*" had DAI known of the inaccuracies on the application. (Emphasis added.) The affidavit states as follows:

        "I, Michael Torello, being first duly and lawfully sworn on my oath, depose and state that I have personal knowledge of the following facts, and that, if sworn as a witness hereto, I could competently and verily testify to the same:

                1. that I am the claim's [*sic*] manager of [DAI] and have been so employed in this capacity during all relevant times herein.

_____

[4]In its motion to reconsider, DAI argues that it was insuring three individuals: Elia, Mario, and Felipe Beltran (Felipe), Elia's 23-year-old son. DAI does not mention Felipe in its motion for summary judgment. DAI mentions Felipe for the first time in its motion for reconsideration. Whether Felipe qualifies as a "driver" under the terms of the application is unclear. Elia testified in her deposition that, on the day of the deposition, she lived with Felipe. Elia does not testify that she lived with Felipe on the day she applied for the DAI policy. Elia also testified that Felipe never drove the Elia vehicle. In addition, there is no evidence in the record to indicate whether Felipe had a driver's license.

-14-

2. that I have reviewed the Amended Complaint filed by [DAI], captioned above, incorporated fully herein and attached hereto with [DAI's] Motion for Summary Judgment as Exhibit A, and verify the allegations contained therein are true and correct to the best of my knowledge."

The affidavit does nothing more than assert that the factual allegations are "true and correct to the best of [his] knowledge." Furthermore, the amended complaint alleges that "[Elia] had other drivers [in her household]" at the time she made her application for insurance. This allegation is contrary to the facts testified to in Elia's deposition, which DAI attaches as evidence to its motion for summary judgment. Elia's unrebutted testimony, coupled with the facts surrounding the discrepancy, *i.e.*, that the female, unlicensed Elia was listed as a male with an international driver's license, that the applicant signature lines bear the notation, "T/O,"[5] and that the application is written in English, a language that Elia does not speak, indicate that the sole error in the application was the name of the insured, which resulted from poor communication. The affidavit does not make more plausible the assertion that Elia was a driver of the Elia vehicle and that there was more than one regular driver of the Elia vehicle.

¶ 64      DAI relies on the affidavit of NIN employee Linda Robnett to assert that NIN is not an agent of DAI.[6] Acuity asks that we not consider Robnett's affidavit, arguing that it does not comply with Illinois Supreme Court Rule 191(a). Rule 191(a) requires that affidavits "shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies." Ill. S. Ct. R. 191(a) (eff. July 1, 2002). Robnett's affidavit does not aver that the statements made in her affidavit are based upon her personal knowledge. Robnett asserts that Elia "chose [DAI] as her insurer from a host of insurers available," but also asserts that "NIN received the application for [Elia's] insurance through an automobile dealership" and that "NIN's records do not reflect any communications with [Elia], other that [*sic*] the application submitted." Robnett does not assert how she knew that Elia selected DAI as her insurer if no one at NIN ever communicated with her. Furthermore, Robnett's affidavit makes reference to NIN documents, but no documents are attached to the affidavit. As a result, Robnett's affidavit fails to comply with the requirements of Rule 191(a).

¶ 65      DAI also argues that, because certain defendants, including Elia and Mario, are in default, the allegations in the complaint are admitted against them and may be used as evidence. DAI

---

[5]Acuity asserts that "T/O" indicates that the application was made over the phone, and DAI does not dispute this assertion.

[6]The parties argue in their briefs that whether or not NIN was an agent of DAI is relevant to this case. NIN was the agent of Elia for the obtaining of the insurance and may have been the agent of DAI for payment. *A&B Freight Line, Inc. v. Ryan*, 216 Ill. App. 3d 1093, 1097 (1991) (holding that under certain circumstances, independent insurance agents may be agents of both insurer and insured). However, since we find that the misrepresentation was not material, it has no effect on our decision-making process.

insists that it is *not* arguing that the allegations in its complaint are admitted against Acuity and the Obermanns, but rather that the allegations are now evidence that Acuity and the Obermanns must "meet and overcome."

¶ 66    A default admits the facts alleged against a defendant in the complaint to be true. *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 334 (1997). A default does not admit the conclusions present in the complaint. *$1,124,905 U.S. Currency*, 177 Ill. 2d at 334. A default for failure to plead is effective against only the party in default. *Universal Casualty Co. v. Lopez*, 376 Ill. App. 3d 459, 464 (2007). After a trial court enters an order of default, the trial court has the discretion to hold a "prove-up" hearing, at which the plaintiff must present proof of the factual allegations in its complaint. *American Service Insurance Co. v. City of Chicago*, 404 Ill. App. 3d 769, 779 (2010). If the plaintiff fails to meet its burden of proof at the prove-up hearing, the trial court may refuse to enter a default judgment. *American Service Insurance Co.*, 404 Ill. App. 3d at 779.

¶ 67    DAI argues that, although the factual allegations of the complaint have not been admitted against Acuity and the Obermanns, the factual allegations have been admitted against Elia and Mario, and are thus evidence. DAI asserts that Acuity and the Obermanns must now "meet and overcome" that evidence to defeat DAI's motion to dismiss. In essence, DAI is arguing that because facts in the complaint are deemed judicially admitted against some parties, those facts are to be treated as presumptively proven against the nondefaulting defendants, and the nondefaulting defendants now have the burden to rebut the presumption.

¶ 68    DAI cites the Illinois Supreme Court case of *Chamblin v. Chamblin*, 362 Ill. 588 (1936) to bolster its point. However, DAI's reading of *Chamblin* is unpersuasive. First, *Chamblin* explicitly states that "[t]he default of one defendant is not an admission by the others, and does not relieve the complainant from the necessity of establishing his case against those who appear and plead." *Chamblin*, 362 Ill. at 593. Next, DAI relies upon a passage in *Chamblin* that states that nondefaulting defendants "may meet and overcome, if they can, the evidence of the complainant." *Chamblin*, 362 Ill. at 593. However, DAI excludes the first clause of the sentence, which states that complainants must "*prove* the issues to the answering defendants." (Emphasis added.) *Chamblin*, 362 Ill. at 593.

¶ 69    To treat the factual allegations of a complaint as "evidence" under DAI's reasoning would be to place an improper burden upon nondefaulting defendants. Nondefaulting defendants would be subjected to a higher burden as a result of the conduct of the defaulting defendants, which is out of the control of nondefaulting defendants.

¶ 70                              III. Motion to Reconsider

¶ 71    DAI also argues that the trial court improperly denied its motion to reconsider. The intended purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence, changes in the law, or errors in the court's previous application of the existing law. *In re Marriage of Epting*, 2012 IL App (1st) 113727, ¶ 41. "Newly discovered evidence" is evidence that was not available prior to the hearing. *Emrikson v. Morfin*, 2012 IL App (1st) 111687, ¶ 30. "In the absence of a reasonable explanation regarding why the evidence was not available at the time of the original hearing, the circuit court is under no

-16-

obligation to consider it." *Emrikson*, 2012 IL App (1st) 111687, ¶ 30.

¶ 72    DAI asserts in its motion to reconsider that the trial court erred in its application of the law. However, DAI does not explain how the trial court misapplied the law when it granted defendants' motion for summary judgment and denied DAI's motion. Instead, DAI reasserts its arguments from its motion for summary judgment. DAI also attached a print-out comparing the cost of the premium DAI would have charged had DAI been insuring more than one individual with the premium actually charged. We have stated above that the DAI policy did in fact cover only one person: Mario. However, even if that were not true, the trial court could not consider it because DAI gave no explanation as to why it did not previously attach such a document to its motion for summary judgment. " 'Trial courts should not allow litigants to stand mute, lose a motion and then frantically gather evidentiary material to show that the court erred in its ruling.' " (Internal quotation marks omitted.) *River Plaza Homeowner's Ass'n v. Healey*, 389 Ill. App. 3d 268, 280 (2009) (quoting *North River Insurance Co. v. Grinnell Mutual Reinsurance Co.*, 369 Ill. App. 3d 563, 572-73 (2006)). DAI also attached to its motion to reconsider a new affidavit from a DAI employee, who argued that the misrepresentation was material because Mario's driving record might have precluded DAI from covering him. However, no driving record is included in the record on appeal. For the same reason, the trial court could not properly consider the affidavit.

¶ 73    In a written order, the trial court found that "[t]here was only one licensed, male driver in the residence at the time of the application." The trial court further found that if the application had included Mario's name instead of Elia's, Mario "would not have been required to disclose that Elia lived in the residence with him because she was not a licensed driver, according to the application form questions." The trial court found no evidence of any indicators that insuring Mario would have negatively affected DAI's risk, such as a bad driving record. We find no such evidence in the record, and therefore, we cannot say that the trial court abused its discretion in denying the motion for reconsideration.

¶ 74                                      CONCLUSION

¶ 75    For the foregoing reasons, the trial court properly granted summary judgment in favor of Acuity and denied summary judgment in favor of DAI.

¶ 76    Affirmed.