2018 IL App (1st) 171931

FIFTH DIVISION
August 3, 2018

No. 1-17-1931

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

|  |  |  |
|---|---|---|
| | ) | |
| DIRECT AUTO INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CH 18678 |
| | ) | No. 14 M1 144563 cons. |
| ANDREW KOZIOL, | ) | |
| | ) | The Honorable |
| Defendant-Appellee. | ) | David B. Atkins, |
| | ) | Judge, Presiding. |

_____

JUSTICE HALL delivered the judgment of the court, with opinion.
Justices Lampkin and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Direct Auto Insurance Company (DAI) appeals from orders of the trial court which denied its motions for summary judgment and reconsideration, and entered judgment in favor of defendant Andrew Koziol based on stipulated facts in a declaratory judgment action. On appeal, DAI contends that the trial court erred in its interpretation of the decision in *Direct Auto Ins. Co. v. Beltran*, 2013 IL App (1st) 121128 when it denied its motion for summary

judgment and erred in entering judgment for Koziol. Although defendant has not filed a brief on appeal, we will consider the appeal pursuant to the principles set forth in *First Capitol Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 131-33 (1976). For the following reasons, we affirm.

¶ 2                                                        BACKGROUND

¶ 3       DAI filed a declaratory judgment action to determine whether it owed coverage to Koziol for a claim arising out of an accident on July 21, 2013, when a vehicle operated by Koziol came into contact with a utility pole. The car that Koziol was driving, a 2008 Dodge Charger, was insured by DAI under a policy taken out by Koziol on April 8, 2013.

¶ 4       After the accident, Koziol made a claim under the policy with DAI. DAI subsequently denied coverage for the accident and rescinded Koziol's policy based on information revealed during its investigation into the accident. As a result, Koziol filed a breach of contract action against DAI in the circuit court of Cook County (14 M1 144563) on September 25, 2014, seeking damages for DAI's refusal to provide coverage for his accident. Additionally, on November 19, 2014, DAI filed a declaratory judgment action (14 CH 18678), seeking a declaration that it did not owe coverage to Koziol based on an alleged material misrepresentation on his application for insurance coverage with DAI that was discovered during its investigation of the accident. DAI alleged in its complaint that the material misrepresentation made the policy void *ab initio*.

¶ 5       Koziol's answer to DAI's complaint consisted of blanket admissions and denials to the various paragraphs of DAI's complaint, with the exception of paragraph 3 (whether DAI was an insurance company in Illinois duly licensed to underwrite insurance policies and sell them to the public) and paragraph 10 (whether Insure on the Spot was an independent insurance agency

acting as Koziol's agent for the purpose of securing insurance), which Koziol neither admitted nor denied and demanded strict proof. Specifically as to paragraph 17 of DAI's complaint, Koziol denied that he knowingly and intentionally provided a false answer to DAI in order to obtain insurance coverage for less money.

¶ 6    The cases were consolidated on May 5, 2015.

¶ 7    On April 20, 2016, DAI filed a motion for summary judgment, raising many of the same allegations it stated in its initial complaint. In the motion, DAI argued that during the course of the claims investigation into Koziol's accident, DAI learned that Koziol failed to disclose the existence of a 2002 Ford Explorer XLS that was registered to, and kept at, his home address by his parents at the time of his electronic insurance application which was submitted through his agent, Insure on the Spot. Additionally, DAI contended in its motion that Koziol falsely responded to the following question on his insurance application: "Any other cars in the household other than those listed on the application?" Koziol answered "no." Further, the applicant statement contained in the application had the following language:

>   "APPLICANT STATEMENT: The applicant states that the application
>
>   was read and attests that all answers are truthful and that said answers
>
>   were made as an inducement to the insurance company to issue a policy,
>
>   and it is a special condition of this policy that the policy shall be
>
>   NULL and VOID and of no benefit or effect whatsoever as to any claim
>
>   arising thereunder in the event that the attestations or statements
>
>   in this application shall prove to be false or fraudulent in nature. It is
>
>   understood that this application shall be part of the policy of

insurance when issued and that it is intended that the company shall rely

on the contents of this application in issuing any policy of insurance

or renewal thereof."

The DAI policy contained a statement regarding "fraud and misrepresentation," which stated, in pertinent part:

"Statements contained in the application are deemed to be

representations relied upon by the Company in issuing this

policy. In the event that any representation contained in

the application is false, misleading or materially affects the acceptance

or rating of this risk by the Company, by either direct

misrepresentation, omission, concealment of facts or incorrect statements,

then coverage for the accident or loss in question shall not be provided by

the Company and/or this policy shall be null and void and of no

benefit whatsoever from its inception. * * *"

¶ 8    Rosa Miranda, DAI's Underwriting Manager, submitted an affidavit in support of the motion for summary judgment in which she averred that "had DAIC been advised that Koziol had additional vehicles residing at his household at the time of his application, such information would have affected the rating or the acceptability of the risk under the policy." DAI contended that had Koziol's omission been disclosed, the policy would have been issued with a substantially higher premium (specifically a $477 increase). DAI argued that Koziol's misrepresentation renders the policy null and void under section 15/154 of the Insurance Code (Code) 215 ILCS

5/154 (West 2016)), it was entitled to rescind the policy, and it was entitled to summary judgment as to its request for a declaration that it owed no coverage to Koziol.

¶ 9    In his response to DAI's motion for summary judgment, Koziol contended that the decision in *Direct Auto Ins. Co. v. Beltran*, 2013 IL App (1st) 121128 applied.  He contended that his parents resided in the same building, not the same unit and that the information had been clearly disclosed and that they were specifically excluded from the policy.  Koziol further noted that DAI only claimed that this information would have raised his insurance rate, not erase liability for coverage for the vehicle that DAI insured.

¶ 10    DAI did not respond to the applicability of *Beltran*  in its reply.

¶ 11    In its written memorandum opinion and order of September 15, 2016, the trial court cited the two-prong test from *Beltran*, 2013 IL App (1st) 121128, for determining whether, under section 5/154, the policy may be rescinded where there has been a misrepresentation.   Under the test, the trial court was required to determine whether the statement was false and whether Koziol intended to deceive DAI on his insurance application or the statement materially affected the acceptance of the risk or hazard assumed by the insurer.  The trial court noted that DAI's reply brief ignored *Beltran* and thus did not argue any distinguishing aspects between it and the present case.  The court concluded that Miranda merely averred that the premium would have been higher, which, standing alone, does not make the misrepresentation material, and noted that she never averred that the policy would not have been issued or that the application would have been rejected.  The court further found that DAI did not provide any evidence that Koziol ever drove the 2002 Ford, which belonged to his parents and was insured under a separate policy with State Farm, or that the existence of the 2002 Ford substantially increased the chances of the events insured against, or that Koziol ever drove his parents' vehicle or that his parents ever

drove his vehicle. The trial court concluded that at minimum, there was a material issue of fact regarding whether Koziol had intent to deceive when he omitted his parents' vehicle from the application to insure his 2008 Charger. The trial court further concluded that the record on summary judgment did not sufficiently demonstrate that the misrepresentation on the application was material, and denied DAI's summary judgment motion as a matter of law.

¶ 12    DAI filed a motion for reconsideration on September 28, 2016, in which it argued that *Beltran* does not hold that an increase in premium by itself is immaterial. DAI also argued that disclosure of the second vehicle here would have affected the acceptability of the risk and that the increase in premium would have been in excess of nearly 35%. While acknowledging there was "no significant Illinois case law on point," DAI argued that the trial court could take judicial notice that the State Legislature and Department of Insurance have found that an increase of premium by 30% on a renewal policy is material enough to require an insurer to provide special notice to the insured. DAI concluded that the mere presence of the undisclosed 2002 Ford results in a 35% increase in premium, which was a different condition for the acceptance of the application, and was enough reason to rescind the policy.

¶ 13    The trial court denied DAI's motion to reconsider in a written order with opinion on February 9, 2017, finding that DAI did not bring any new evidence or cite any new legal authority; instead DAI only argued that the court misapplied the law and misunderstood the nature of the case. The trial court noted that DAI's first attempt to address *Beltran* was in its motion to reconsider, which constituted a new legal theory, which is generally disallowed on a motion to reconsider, but that it would nonetheless consider DAI's argument. In so doing, the trial court stated that while an increase in premium may be material sometimes, that is not always true. The evidence showed that Koziol's parents' vehicle was insured by State Farm and

there was no evidence presented that Koziol ever drove the 2002 Ford or that his parents ever drove his vehicle, the 2008 Dodge. The trial court concluded that because DAI presented no evidence as to how the additional people residing with Koziol along with the additional vehicle actually increases the risk being insured against and Miranda's affidavit was insufficient, that DAI had failed to demonstrate that there was a material misrepresentation.

¶ 14 Subsequently, DAI and Koziol agreed to resolve the consolidated action without a full trial. On July 28, 2017, the trial court entered a written stipulation and judgment order. The judgment order provided that: the parties agreed that there were no triable issues of fact as the relevant facts are not in dispute, and the dispute is a question of law; Koziol had an additional vehicle in his household which he failed to disclose on his insurance application with DAI; the initial premium charged was $1,342; Koziol's premium would have increased by $477 had the additional vehicle in the household been disclosed under DAI's underwriting guidelines; and the trial court found, in denying DAI's motions for summary judgment and reconsideration that *Beltran* holds that a premium increase, by itself, is not material as required to rescind an automobile insurance policy. The judgment order did not refer to the issue of intent to deceive or evidence as to additional risk. Because the remaining dispute was the application of *Beltran* to the facts, which was a question of law, and the trial court had previously determined that *Beltran* precluded DAI from demonstrating that Koziol's misrepresentation was material solely based on evidence that a higher premium would have been charged, judgment was entered in favor of Koziol on DAI's declaratory judgment and Koziol's remaining counter-complaint. The parties further agreed and stipulated, and the trial court found, that the value of Koziol's claim was $11,573.55, and judgment was entered in favor of Koziol and against DAI for that amount.

Enforcement of the judgment was stayed pending DAI's appeal, and all other matters and disputes raised in the pleadings were dismissed by the parties.

¶ 15    DAI filed a timely notice of appeal on August 1, 2017.

¶ 16                                    ANALYSIS

¶ 17                Denial of Summary Judgment and Motion to Reconsider

¶ 18    DAI contends on appeal that the trial court improperly denied its motions for summary judgment and reconsideration based on this court's prior decision in *Beltran*, which the court found precluded an insurance company from rescinding a policy for a misrepresentation or omission solely on the basis of a premium increase.

¶ 19    Ordinarily, the denial of summary judgment is not appealable.  An order denying a motion for summary judgment is interlocutory in nature, and, is not appealable. *Kroot v. Chan*, 2017 IL App (1st) 162315, ¶ 10.  Any error in the denial of a motion for summary judgment merges into the final judgment rendered by the trial court, and it is from that final judgment that an appeal is taken. *Kroot*, 2017 IL App (1st) 162315, ¶ 10.  Further, an exception to this rule has been recognized where the issue raised in the motion for summary judgment presents a question of law and therefore would not be decided by the jury. *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶ 42.  However, the summary judgment here, despite DAI's argument, does not present solely a question of law.  In denying the motions for summary judgment and reconsideration, the trial court said there were questions of fact as to whether there as an intent to deceive and whether there was increased risk.   Thus, the trial court's rulings on the motions for summary judgment and the motion to reconsider merged into the final judgment. Accordingly, we dismiss DAI's appeal from the trial court's order of September 15, 2016,

denying its motion for summary judgment and the trial court's order of February 9, 2017, denying its motion to reconsider.

¶ 20                              Entry of Judgment for Koziol

¶ 21    DAI next contends that the trial court erred in entering judgment for Koziol based on its interpretation of the *Beltran* decision.   DAI restates its argument raised on its motion to reconsider before the trial court, namely that there would have been a 35% increase in premium had the 2002 Ford been disclosed on the insurance application, thus Koziol's misrepresentation was material and authorized rescission under the Code.

¶ 22    We are determining whether the facts supported the judgment.  A judge's findings of fact in a civil case are generally accorded manifest-weight review.  *Franz v. Calaco Development Corp.*, 352 Ill. App. 3d 1129, 1139 (2004).

¶ 23    As a preliminary matter, section 154 of the Code governs misrepresentations and false warranties. That section states as follows, in pertinent part:

> "No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor.  No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company. * * * "  215 ILCS 5/154 (West 2016).

¶ 24    As we have stated, section 154 establishes a two-prong test for determining if the policy may be rescinded.  *Law Office of Tuzzolino and Terminas et al.*, 2015 IL 117096, ¶ 17.  Under

the first prong, the statement must be false; and under the second prong, the statement must have been made with an actual intent to deceive or either the statement must "materially affect the acceptance of the risk or hazard assumed by the insurer." *Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 464 (2003). Our supreme court has interpreted section 154 as permitting rescission for an innocent misrepresentation if it materially affects the insurer's acceptance of the risk. *Law Office of Tuzzolino and Terminas et al.*, 2015 IL 117096, ¶ 17.

¶ 25 A material misrepresentation in an application for insurance is a statement of something as a fact which is untrue and affects the risk undertaken by the insurer. *Garde by Garde v. Country Life Ins. Co.*, 147 Ill. App. 3d 1023, 1031 (1986). Whether an insured's statements are material is determined by "whether reasonably careful and intelligent persons would have regarded the facts stated as substantially increasing the chances of the events insured against, so as to cause a rejection of the application." *Northern Life,* 234 Ill. App. 3d at 801. In establishing the materiality of a misrepresentation, an insurer may rely on the underwriter's testimony or the testimony of its employees. *Northern Life*, 234 Ill. App. 3d at 802. Ordinarily, the materiality of a misrepresentation is a question of fact. *Garde,* 147 Ill. App. 3d at 1032.

¶ 26 We find it helpful to first discuss the *Beltran* case which is central to the disposition of DAI's issues on appeal.

¶ 27 In *Beltran*, DAI[1] filed an action seeking a declaratory judgment, arguing that: 1) an insurance policy it issued to defendant Elia Beltran was rescinded and null and void, *ab initio*; 2) that DAI owed no duties under the policy to any of the defendants; and 3) that defendants were not entitled to any recovery under the policy. DAI and defendant Acuity Insurance Company

---

[1] Direct Auto Insurance Company (DAI) is the same plaintiff in *Beltran* and the current case.

(Acuity), as subrogee of Alice Obermann, George Obermann, and Mark Obermann, filed cross-motions for summary judgment. *Beltran*, 2013 IL App (1st) 121128, ¶ 1. The trial court granted Acuity's motion, finding coverage by DAI, and denied DAI's motion to reconsider. *Beltran*, 2013 IL App (1st) 121128, ¶ 1. This court affirmed on appeal. *Beltran*, 2013 IL App (1st) 121128, ¶ 1.

¶ 28 The declaratory judgment action in *Beltran* arose from an underlying subrogation action filed by Acuity as subrogee of the Obermanns, alleging negligence against Mario and negligent entrustment against Elia. *Beltran*, 2013 IL App (1st) 121128, ¶ 9. On or about December 15, 2008, while Mario was operating Elia's vehicle, he collided with Mark's vehicle, covered by Acuity. *Beltran*, 2013 IL App (1st) 121128, ¶ 10.

¶ 29 DAI received an application for automobile insurance from Northwest Insurance Network, Inc. (NIN), an insurance broker. The application listed Elia Beltran as the applicant, and listed Elia's gender as "M," despite Elia being a woman. The application stated that Elia had an international driver's license; however, Elia stated in her deposition that she did not know how to drive an automobile. She owned a 2006 Ford Freestyle SE vehicle, which she purchased with the intent that Mario Beltran, her brother, would use it to drive her to and from work. Elia did not sign the application; the applicant signature lines bore the notation "T/O."[2] After receiving the application, DAI issued an insurance policy to Elia, which covered bodily injury, property damage, medical payments, uninsured motorist and physical damage. The DAI policy had an effective date of November 23, 2008. *Beltran*, 2013 IL App (1st) 121128, ¶ 5.

---

[2] DAI stated in its brief in *Beltran* that "T/O" meant "taken over the telephone." *Beltran*, 2013 IL App (1st) 121128, ¶ 5 n.2.

¶ 30    In its complaint for declaratory judgment, DAI alleged that Elia made material misrepresentations in her insurance application and as a result, there was no coverage. *Beltran*, 2013 IL App (1st) 121128, ¶ 13.  DAI alleged the following facts:  NIN was an "independent insurance agency" acting as Elia's agent for the purpose of securing insurance; on or about November 24, 2008, Elia, through NIN, submitted an electronic application for insurance to DAI; the DAI policy was issued on November 28, 2008, based on the application submitted by NIN; and Elia was the named insured under the policy and owned the vehicle. *Beltran*, 2013 IL App (1st) 121128, ¶ 13.

¶ 31    The DAI policy at issue in *Beltran* contained the same "fraud and misrepresentation" section as the policy in the instant case.  In pertinent part, that section stated:

> "Statements contained in the application are deemed to be
>
> representations relied upon by the Company in issuing this
>
> policy.  In the event that any representation contained in
>
> the application is false, misleading or materially affects the acceptance
>
> or rating of this risk by the Company, by either direct
>
> misrepresentation, omission, concealment of facts or incorrect statements,
>
> then coverage for the accident or loss in question shall not be provided by
>
> the Company and/or this policy shall be null and void and of no
>
> benefit whatsoever from its inception. * * *"
>
> *Beltran*, 2013 IL App (1st) 121128, ¶ 14.

¶ 32    The application requested a list of known drivers of the vehicle and listed Elia as a driver and stated that the applicant warranted that there were no other drivers other than those listed

below. No other drivers were listed. DAI alleged that Elia, "either individually or through her agent, intentionally misled DAI as to the other drivers in her residence." DAI further alleged that, had it known that the vehicle was to be operated by drivers other than Elia, that information would have "materially affected DAI's decision to issue the DAI policy" to Elia, and that it would not have issued the DAI policy as written. *Beltran*, 2013 IL App (1st) 121128, ¶ 17. DAI also alleged that, due to Elia's material misrepresentation, the DAI policy is null and void, *ab initio*. *Beltran*, 2013 IL App (1st) 121128, ¶ 17. DAI rescinded the policy and returned Elia's full premium on or about December 29, 2008, and contended that it owed no duty to defend Elia and Mario.

¶ 33 During Elia's deposition,[3] she testified that: she did not recall the name of the dealership where she purchased her vehicle; someone at the dealership told her that the vehicle came with insurance; Elia did not know how to drive and she purchased the vehicle with the intent that Mario would operate it; someone at the dealership asked her whether other people would drive the vehicle and she indicated that Mario would drive it, to which the person responded "that's okay;" she did not speak with NIN to apply for the insurance and never contacted them until the accident; and at the time of the accident, Mario had her permission to operate the vehicle. *Beltran*, 2013 IL App (1st) 121128, ¶ 32.

¶ 34 In its motion for summary judgment, Acuity argued that DAI failed to, and could not prove that Elia made a material misrepresentation necessary to declare the policy void, *ab initio*, because Elia did not make a false statement, and even if she had, she had no intent to deceive or materially affect the acceptance of the risk or hazard assumed by DAI. *Beltran*, 2013 IL App

_____

[3] Elia spoke limited English and her Spanish literacy was limited by the fact that she could not write in Spanish.

(1st) 121128, ¶ 34. The trial court granted Acuity's motion for summary judgment. *Beltran*, 2013 IL App (1st) 121128, ¶ 36.

¶ 35 In denying DAI's motion to reconsider, the trial court concluded that Elia made no intentional misrepresentation and that there was one licensed, male driver in Elia's residence at the time of application (Mario). The trial court further found that had the application been completed correctly, with the name Mario instead of Elia, Mario would not have been required to disclose that Elia lived in the residence with him because she was not a licensed driver according to the application questions. The trial court found no evidence of "any other indicators that might have affected the risk assumed negatively, such as negative driving record, etc." *Beltran*, 2013 IL App (1st) 121128, ¶ 39.

¶ 36 This court, in affirming the trial court, found, contrary to DAI's assertion, that Elia did not make a false statement in her application regarding additional licensed drivers because unrebutted testimony unequivocally stated that she was not a licensed driver and would not operate the vehicle. As such, the number of drivers covered under the policy was the same as the number of drivers disclosed on the application by Elia: one. The court concluded, "[i]n effect, Elia was given coverage [and] seeking coverage for Mario for a nonowned automobile." *Beltran*, 2013 IL App (1st) 121128, ¶ 50.

¶ 37 The court found that the discrepancy existed in the name of the driver; the application stated that a male named Elia Beltran was the insured driver when in fact a male named Mario Beltran was the intended insured driver and Elia Beltran is a female. *Beltran*, 2013 IL App (1st) 121128, ¶ 51.

¶ 38 In distinguishing cases cited by DAI, this court concluded that the misrepresentations in those cases were material because the insurers would have denied coverage had the insureds not

made their misrepresentations, whereas DAI stated that it would not have issued the policy *as written*, and that Elia's premium *would have been* higher. (Emphasis in original.) *Beltran*, 2013 IL App (1st) 121128, ¶ 60. This court further found that there was no misrepresentation that " 'substantially increased the chances of the events insured against.' " *Beltran*, 2013 IL App (1st) 121128, ¶ 62, quoting *Northern Life Insurance Co. v. Ippolito Real Estate Partnership*, 234 Ill. App. 3d 792, 801 (1992). Any misrepresentation by Elia was not material because she did not misstate the number of regular drivers of the vehicle. *Beltran*, 2013 IL App (1st) 121128, ¶ 62. The court concluded that there was no showing that Elia intentionally misrepresented the facts and the policy should have been classified as a nonowned vehicle policy with an increase in premium. *Beltran*, 2013 IL App (1st) 121128, ¶ 62.

¶ 39    In the trial court, DAI had relied on the affidavit of its claims manager, Michael Torello, to assert that it would not have issued the policy as written or it would not have been issued at all had DAI known of the inaccuracies on the application. *Beltran*, 2013 IL App (1st) 121128, ¶ 63. However, on appeal, this court found that the affidavit did nothing more than assert that the factual allegations of the amended complaint were true and correct, and did not make more plausible the assertion that Elia was a driver of the vehicle and that there was more than one regular driver of the vehicle. *Beltran*, 2013 IL App (1st) 121128, ¶ 63.

¶ 40    In affirming the trial court, this court found that there was no evidence which indicated that insuring Mario would have negatively affected DAI's risk, such as a bad driving record, and concluded that the trial court properly denied DAI's motion for summary judgment.

¶ 41    Turning to the case at bar, we find that the very little evidence presented by DAI fails to satisfy the two-prong test of section 154 as analyzed by this court in *Beltran*.

¶ 42    There is no dispute that Koziol failed to disclose his parents' 2002 Ford vehicle in his application for insurance with DAI for his 2008 Charger.  There is also no dispute that the vehicle was separately insured by a different insurance company (State Farm).  Nor is there any dispute that had DAI known of the additional vehicle, it would have charged Koziol an additional $477 for his premium.

¶ 43    However, there is no nexus shown between these undisputed facts and DAI's unsupported conclusion that they substantially increased the insurer's acceptance of the risk.  In support of its conclusion, DAI argues in its brief that "[a]fter all, it is the premium charged which reflects the risk."  DAI's sole argument is that a 35% increase in premium is a "different condition for the acceptance of an insurance application," citing this court's decision in *Ratliff v. Safeway Ins. Co.*, 257 Ill. App. 3d 281 (1993).  However, DAI has not presented evidence of any actual increased risk.

¶ 44    In *Ratliff,* this court held that the insured's failure to disclose a 20-year old driver residing in the same household was a misrepresentation that materially affected the risk assumed by the insurer, finding that it was common knowledge that the rate of frequency of accidents for younger drivers was substantially greater than that for all drivers who are 25 years of age or older.  *Ratliff*, 257 Ill. App. 3d at 288.   This court also found that had the insured disclosed her son's presence in the household, his age and the amount he drove the car, the insurance company "certainly would have reassessed the risk it was assuming."  *Ratliff*, 257 Ill. App. 3d at 288. Moreover, the parties stipulated that on January 20, 1987, almost a month after the accident, the insured requested that her son be added to her policy, and that the insurance company charged an additional $320 to add him.  The court concluded that "[t]his additional premium is clearly a

different condition of the contract of insurance, *caused by listing Michael as a driver and disclosing his age*." *Ratliff*, 257 Ill. App. 3d at 289. (Emphasis added.)

¶ 45    We find the circumstances presented in *Ratliff* to be distinguishable from those present in the instant case. Here, as in *Beltran*, DAI has again presented nothing in its pleadings and affidavits to support its conclusion that additional people residing with Koziol who were not drivers of the 2008 Dodge, the DAI-insured vehicle, along with the additional vehicle, which was insured by another carrier and not driven by Koziol, actually increased the risk being insured against. There was no evidence presented that Koziol's parents ever drove the 2008 Charger, nor was there any evidence presented that Koziol drove the 2002 Ford. Moreover, DAI has not presented evidence that it would not have issued the policy if the additional vehicle had been disclosed. Thus, there was no evidence presented, except for the increased premium, as justification for the rescission, just like in *Beltran*. We conclude that the omission of the additional vehicle was not a material misrepresentation as contemplated by section 154 of the Code. 215 ILCS 5/154 (West 2016).

¶ 46    As such, we conclude that the trial court properly applied this court's reasoning in *Beltran* in entering judgment in favor of Koziol and its ruling was not against the manifest weight of the evidence. We therefore find that an increase in premium, standing alone, without any actual evidence of an increased risk to the insurer, is insufficient to justify rescission of an automobile insurance policy under section 5/154 of the Code.

¶ 47                                        CONCLUSION

¶ 48    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 49    Affirmed.

`