# Illinois Official Reports

## Appellate Court

---

### *Palos Community Hospital v. Humana, Inc.*, 2020 IL App (1st) 190633

---

| | |
|---|---|
| Appellate Court Caption | PALOS COMMUNITY HOSPITAL, Plaintiff-Appellant, v. HUMANA, INC.; HUMANA INSURANCE COMPANY, INC.; HUMANA HEALTH PLAN, INC.; ADVOCATE HEALTH CARE; and MOTOROLA SOLUTIONS, f/k/a MOTOROLA, INC., Defendants (Humana Insurance Company, Inc., Defendant-Appellee). |
| District & No. | First District, Sixth Division<br>No. 1-19-0633 |
| Filed | April 17, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-7185; the Hon. Diane M. Shelley, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Everett J. Cygal, Catherine M. Masters, Neil Lloyd, David Y. Pi, and Christopher A. Nelson, of Schiff Hardin LLP, of Chicago, for appellant.<br><br>Tacy F. Flint, Suzanne B. Notton, and Emily Scholtes, of Sidley Austin LLP, and Scott C. Solberg and James W. Joseph, of Eimer Stahl LLP, both of Chicago, for appellee. |

Panel JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Cunningham and Connors concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff, Palos Community Hospital (Palos), appeals the order of the circuit court of Cook County entered on the jury's verdict finding defendant Humana Insurance Company, Inc. (HIC), not liable on Palos's breach of contract claims. On appeal, Palos contends the trial court erred in (1) denying Palos's motion for substitution of judge as of right where the judge made no ruling on any substantive issue; (2) determining that a facially unambiguous contract had a latent ambiguity that the jury should interpret; (3) imposing monetary, evidentiary, and instructional sanctions against Palos for spoliation where the electronic records containing sensitive information were discarded in good faith and duplicates of the discarded records existed; (4) dismissing its fraud claim as untimely; and (5) barring Palos from presenting certain evidence to quantify its contract damages claim. For the following reasons, we affirm.

¶ 2                    I. JURISDICTION
¶ 3    The trial court entered judgment on the jury verdict on June 18, 2018. The court denied Palos's posttrial motion on March 20, 2019, and Palos filed its notice of appeal on March 28, 2019. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered below.

¶ 4                    II. BACKGROUND
¶ 5    Palos has been a provider of health care since 1973. As a provider, Palos contracts with many different insurers who have managed-care plans, such as health maintenance organizations (HMOs) and preferred provider organizations (PPOs). Through HMOs and PPOs, insurers promise patient volume, or steerage, in exchange for discounted medical fees.

¶ 6    In 1985, Palos contracted with Michael Reese Health Plan, Inc. (MRHP), an HMO, to provide services to MRHP members at agreed-upon rates. In 1991, the assets of MRHP were sold and assigned to Humana Health Plan, Inc. (HHP), a Kentucky corporation. On February 15, 1991, Palos signed a form consenting to the assignment of its contract with MRHP to "Humana Health Plan, Inc. or its affiliates." In July 1991, Palos's contract with MRHP, now assigned to and assumed by HHP, was amended to reflect that Palos agreed to provide medical services as set forth in the agreement to "Humana Health Care Plans Preferred Provider Organization" under "the same terms and conditions specified" for members of MRHP's HMO. The contract was amended again in 2004, 2005, and 2008, but none of the subsequent changes affected the terms of the July 1991 amendment.

¶ 7    In January 1998, Palos entered into a provider agreement with Private Healthcare Systems, Inc. (PHCS). PHCS was a consortium of insurers who agreed on a common set of PPO terms under which Palos would be reimbursed for services provided to their members. One of the insurers in the consortium was Employers Health Insurance Company, a Humana entity.

¶ 8    On June 14, 1999, Humana sent a letter to Palos with "important information" regarding the "Employers Health Insurance/Humana PPO provider network currently managed by [PHCS]." The letter stated that effective August 1, 1999, "EHI/Humana will assume the management and operation of its provider network and rename it ChoiceCare." Instead of paying PHCS to provide network administration services, EHI/Humana would perform these duties.

¶ 9    On April 29, 2002, ChoiceCare sent a letter inviting Palos to join the network and to review the enclosed agreement. The letter identified ChoiceCare Network as "a wholly owned subsidiary of Humana, Inc.; therefore, the proposed rate structure would be at parity with the rate structure currently in place for the Humana PPO product lines." Since Humana PPO enrollees were already part of the ChoiceCare Network, the agreement served to "formalize" the network's relationship with Palos and other hospitals. On June 6, 2002, Palos signed a "Hospital Participation Agreement" with ChoiceCare. The agreement provided that "Hospital shall accept payment from Payors for Covered Services provided to Members in accordance with the reimbursement terms in Attachment B." These PPO reimbursement rates were higher than the rates applicable pursuant to the 1991 amendment to the MRHP agreement. The ChoiceCare agreement also provided that

> "Nothing in this Agreement shall limit or prohibit a Payor from contracting directly with or maintaining a direct agreement with Hospital and utilizing such direct agreements for payment for Covered Services to Members. In the event that Payor elects to apply discounts from their direct agreement with Hospital, the Payor shall not apply the discount from this Agreement so long as its direct agreement with Hospital remains in effect."

The "Payor" is identified in the Payor Agreement as Humana Insurance Company (HIC).

¶ 10    On July 1, 2004, Andrew Stefo, the chief financial officer of Palos, sent a letter to Humana stating that "Choice Care is accessing Humana's PPO discounts" applicable to the agreement with the former MRHP, when the "separate agreement with Choice Care *** should govern the payments received for services rendered to its members." Stefo requested that Humana "[e]nsure" reimbursements are made according to the proper agreement, and "[c]oordinate the proper, additional reimbursement due to Palos." The record contains no response to Stefo's letter.

¶ 11    In May 2008, Palos hired a contract compliance auditor, HealthCheck, to audit insurers' payments under their managed-care contracts. Palos subsequently filed a complaint with the Illinois Department of Insurance and on February 12, 2010, made a formal demand against Humana "for the immediate payment of $21,964,243." According to the demand letter, Palos spoke with Humana representatives who informed Palos that "only a very limited number of out-of-state Humana members have been—and continue to be—covered under the ChoiceCare contract." The Department of Insurance ultimately declined to intervene, suggesting that the matter was one for "a court of law."

¶ 12    On June 21, 2013, Palos filed a complaint for fraud and breach of contract against Humana, Inc., HIC, HHP, Advocate Health Care, and Motorola Solutions. The case was assigned to Judge Sanjay Tailor, who dismissed the fraud claims as time-barred. The court found that "no later than July 1st, 2004, [Palos] knew of its injury and its wrongful cause, as evidenced by Stefo's letter." Therefore, the cause of action accrued "no later than that date."

¶ 13　　The breach of contract claims proceeded to discovery. HIC requested Palos's billing and collection records to ascertain what reimbursement rates Palos believed applied to the disputed claims. Discovery disputes ensued, and since the court did not "anticipate the number of discovery disputes to abate or decrease," it appointed James Sullivan, a retired judge, as "discovery master" to mediate at the parties' expense. Neither party objected to Judge Sullivan's appointment. Although the court expected the parties to come to a resolution, it stated that Judge Sullivan could submit a recommendation if the parties could not agree, and the parties would have an opportunity to file objections.

¶ 14　　The parties worked with Judge Sullivan for five months but could not come to an agreement. Judge Sullivan drafted a letter to Judge Tailor, dated March 20, 2017, recommending that "[Palos] shall respond to Humana's Request for Production Nos. 1, 24, 31 and 34" and "to Humana's Interrogatories Nos. 13, 19 and 22." He also recommended that "the Court order Palos to produce the documents and data that reflect the rates that Palos expected to be paid by Humana," specifying documents Palos "shall include" in the production.

¶ 15　　At a hearing the next day, the parties learned that the case was reassigned to Judge Diane Shelley because Judge Tailor had moved to the chancery division. Judge Sullivan attended the hearing and tendered his recommendation letter to the court. After Judge Shelley held two hearings, Palos filed a motion for substitution of judge as a matter of right. Judge Shelley denied the motion, finding that Palos had "discern[ed] the court's disposition toward a very important issue in the case, the production of certain documents which are at the heart of this controversy."

¶ 16　　Discovery proceeded, and HIC learned that Palos had instructed JDA eHealth Systems, Inc. (JDA), which provided Palos with daily reports regarding proper reimbursement for claims, to permanently delete all of Palos's data. HIC moved for discovery sanctions due to Palos's destruction of evidence. The court granted the motion and ordered Palos to pay HIC's attorney fees and costs. It also found that "an adverse instruction as found in Ill. Pattern Jury Instructions Civ. 5.01 is appropriate under the facts of this case." The court subsequently denied Palos's motion to reconsider. We set forth the facts concerning this issue and the substitution of judge issue in more detail when we address Palos's claims below.

¶ 17　　In April 2018, the parties filed cross-motions for summary judgment. HIC alleged that, through the July 1991 amendment, Palos unambiguously contracted to provide care for Humana PPO members in accordance with rates specified in Palos's direct contract with MRHP. Alternatively, HIC argued that Palos's acceptance of reimbursement at the direct contract rates established the existence of an implied contract. Palos argued in its motion for summary judgment that the direct contract terms unambiguously show it applied only to a PPO operated by HHP. Palos alleged that the direct contract did not cover HIC and that HIC was obligated under the ChoiceCare agreement to pay ChoiceCare rates for Humana PPO members.

¶ 18　　The trial court denied both motions. The court found that the July 1991 amendment was "determinative" but that "the terms of the amendment are ambiguous despite the parties' contentions to the contrary." It noted that, while HHP was named in the amendment, it could not operate a PPO because it was not an insurance company. Also, while HIC was an insurance company, it was not identified in the amendment. After reviewing the parties' respective submissions of extrinsic evidence in support of their motions, the trial court ruled that the evidence did not "resolve the ambiguity." Therefore, the ambiguous 1991 amendment "must be construed by the jury."

¶ 19 After a 10-day trial on liability and damages, the jury found HIC not liable on Palos's breach of contract claim. Specifically, the jury found Palos failed to "prove [HIC] was required to reimburse it, as a Preferred Provider, according to the Reimbursement Amounts specified in the ChoiceCare Agreement." The trial court denied all posttrial motions, and Palos filed this timely appeal.

¶ 20                                       III. ANALYSIS
¶ 21                       A. Substitution of Judge as a Matter of Right
¶ 22 Palos contends that the trial court erred in denying its motion for substitution of judge as a matter of right. Section 2-1001(a)(2)(i) of the Code of Civil Procedure (Code), provides that "[w]hen a party timely exercises his or her right to a substitution without cause" the party "shall be entitled to one substitution of judge without cause as a matter of right." 735 ILCS 5/2-1001(a)(2)(i) (West 2016). If properly made, the right is absolute, and the trial court has no discretion to deny a motion for substitution of judge as of right. *Cincinnati Insurance Co. v. Chapman*, 2012 IL App (1st) 111792, ¶ 23.

¶ 23 However, to discourage "judge shopping," a motion for substitution of judge "must be filed at the earliest practical moment before commencement of trial or hearing and before the trial judge considering the motion rules upon a substantial issue in the case." *In re Estate of Hoellen*, 367 Ill. App. 3d 240, 245-46 (2006). Rulings on substantial issues include rulings on motions to dismiss, pretrial rulings of law, or where the moving party "has discussed issues with the trial judge, who then indicated a position on a particular point." *Partipilo v. Partipilo*, 331 Ill. App. 3d 394, 398 (2002). Even if the judge did not rule on a substantive issue, the substitution motion may be denied if the party has tested the waters and formed an opinion as to the judge's reaction to his or her claim. *Id.* at 398-99. Whether the trial judge made a ruling on a substantial issue in the case is a question of law we review *de novo*. *Nasrallah v. Davilla*, 326 Ill. App. 3d 1036, 1039 (2001).

¶ 24 As noted above, the parties learned at a March 21, 2017, hearing that their case had been reassigned to Judge Shelley. Judge Sullivan also tendered his recommendation letter regarding the parties' discovery disputes to the court. Palos argued that Judge Sullivan's recommendation effectively was a reconsideration of a prior court order and that there was no authority for Judge Tailor to appoint a special master of discovery. Palos informed Judge Shelley that it wished to file an objection following the procedure Judge Tailor had set forth. Judge Shelley saw no need "to deviate from the procedure that Judge Tailor has already established in this case, and I will continue to follow it unless, and I have a very open mind, unless something new is presented to the Court."

¶ 25 At the hearing, Judge Sullivan responded to Palos's argument and stated to the court that "I don't believe that I was reconsidering any Judge's order. I was making a recommendation based on the transcripts and the other things." Judge Shelley replied that she understood Judge Sullivan was appointed to assist the court in the highly disputed discovery process and that "there is precedent that says that a trial—a judge has that discretion." The parties agreed on a briefing schedule regarding Palos's objection.

¶ 26 On April 4, 2017, Palos filed its objections to the content of Judge Sullivan's recommendation letter. Palos also filed a motion to strike the special master, Judge Sullivan. On April 13, 2017, Judge Shelley held a hearing regarding these filings. At the hearing, Palos argued that Judge Sullivan's appointment was prohibited by the Illinois Constitution and there

was no basis for him as a mediator to provide recommendations to the court if the parties were unable to resolve their discovery dispute. Palos contended that, if Judge Shelley agreed with Palos on this point, she would not have to consider the objections.

¶ 27 Judge Shelley reiterated that her predecessor determined Judge Sullivan's assistance was required to help resolve the discovery dispute. She stated, "I'm not making an announcement at this juncture, but there is some precedent for a judicial officer to seek assistance in matters of this nature." HIC requested an opportunity to respond to Palos's motion to strike, and the parties amended the previous briefing schedule to incorporate Palos's motion to strike. At the end of the hearing, Palos told the court that "we've spent a lot of time researching [the motion to strike] issue, so we think we have found all the pertinent authority out there. But if there is something that you think we should be looking at, we would certainly take it under advisement." Judge Shelley responded, "again, I'm not making any type of an announcement at this point. But when I inherited this call, I did notice this case, and *** I was not shocked by the position that my predecessor took." She would "keep an open mind" and would review Palos's cases and follow its argument.

¶ 28 A week later, on April 20, 2017, Palos filed a motion for substitution of judge as of right. Judge Shelley denied the motion as untimely, reasoning that

> "This is clearly a case where the movant tested the waters and determined that the court may be reluctant to strike the discovery master and his report which recommended that the certain contentious documents be produced. This court unequivocally expressed opinions at the March 21, 2017 appearance as to setting aside the appointment, and again on April 13th. The parties have had an opportunity to discern the court's disposition toward a very important issue in the case, the production of certain documents which are at the heart of this controversy."

Palos filed a motion to reconsider, which the trial court denied. The court also denied Palos's request for Illinois Supreme Court Rule 308 (eff. Jan. 1, 2016) certification.

¶ 29 We find the trial court properly denied Palos's motion for substitution of judge. Palos filed a motion to strike Judge Sullivan's appointment, and in response to Palos's arguments on the issue at the March 21 and April 13 hearings, Judge Shelley stated that she believed there was precedent for such an appointment. The court may deny the motion if the movant had an opportunity to form an opinion on the judge's reaction to his or her claim. *Safeway Insurance Co. v. Ebijimi*, 2018 IL App (1st) 170862, ¶ 33. Also, as the court pointed out, Judge Shelley's reluctance to strike the discovery master implied that the court would accept his report, which "recommended that certain contentious documents be produced." Thus, Palos had tested the waters because it could discern Judge Shelley's position on the production of documents "at the heart of this controversy."[1]

¶ 30 Palos argues that Judge Shelley volunteered her views on her own initiative and, therefore, its motion should not have been denied based on the testing of the waters. A motion for substitution of judge as of right should not be denied if the judge herself voluntarily brought the issue to counsel's attention. See *Cincinnati Insurance Co.*, 2012 IL App (1st) 111792, ¶ 25.

---

[1]Palos argued in its brief that the testing of the waters exception is not a valid exception to section 2-1001. We disagree. While there may be a conflict with other appellate districts, " 'testing of the waters' remains a viable objection to substitution of judge motions as of right in the First District." *Colagrossi v. Royal Bank of Scotland*, 2016 IL App (1st) 142216, ¶ 36.

The record shows, however, that at the first hearing Palos initially raised its argument that there was no precedent for Judge Sullivan's appointment and that the court subsequently stated that it believed such precedent did exist. At the second hearing, Palos invited Judge Shelley to respond by stating that, if she agreed with Palos's position, the court would not have to reach the merits of Palos's objection to the contents of Judge Sullivan's recommendation letter. Counsel for Palos also told the court that "we've spent a lot of time researching [the motion to strike] issue, so we think we have found all the pertinent authority out there. But if there is something that you think we should be looking at, we would certainly take it under advisement." Judge Shelley then responded, "again, I'm not making any type of an announcement at this point. But when I inherited this call *** I was not shocked by the position that my predecessor took." We disagree that Judge Shelley volunteered her opinion on her own initiative and affirm the denial of Palos's motion for substitution of judge as of right.

¶ 31                    B. Denial of Summary Judgment on Liability Claim

¶ 32    Palos alleged that HIC breached its agreement with Palos because it made payments based on rates set forth in the July 1991 amendment to the MRHP agreement, when it was obligated to pay the rates in the ChoiceCare agreement. Pursuant to the amendment, Palos agreed to provide services to Humana Health Care Plan PPO members "under the same terms and conditions specified in the hospital agreement for members of Humana-Michael Reese Health Maintenance Organization." Palos argues that since HIC is not identified in the amendment, it is clear on its face that HIC was not a party to the agreement. Palos contends it was entitled to judgment on its liability claim as a matter of law because the facially unambiguous terms of the July 1991 amendment show that the amendment did not apply to HIC.

¶ 33    Palos made essentially the same argument in its motion for summary judgment. The trial court denied the motion, and the case went to trial with a jury verdict. In general, when a case proceeds to trial after the denial of a motion for summary judgment, the order denying the motion "merges with the judgment entered and is not appealable." *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶ 42. There is an exception to this general rule. If the issue raised in the summary judgment motion is one of law that a jury would not decide, the denial of the motion does not merge with the final judgment, and it is subject to *de novo* review. *Id.*

¶ 34    Courts must interpret, as a matter of law, the meaning of a facially unambiguous contract from the contract itself, without resort to extrinsic evidence. *Morningside North Apartments I, LLC v. 1000 N. La Salle, LLC*, 2017 IL App (1st) 162274, ¶ 15. It is clear that HIC was not expressly identified in the July 1991 amendment. However, this fact in itself does not render the amendment unambiguous on the issue of whether the amendment applied to HIC, as the trial court found. The amendment modified a prior agreement between Palos and MRHP. MRHP assigned the agreement to HHP. A contract must be interpreted as a whole, and when multiple contracts exist or when amendments are made, courts must consider all parts of the agreement to determine the parties' intent. *Downers Grove Associates v. Red Robin International, Inc.*, 151 Ill. App. 3d 310, 318 (1986).

¶ 35    The amendment refers to the agreement between MRHP and Palos, which was assigned to "Humana Health Plans, Inc.," and Palos consented to the assignment "to Humana Health Plan, Inc. or its affiliates (collectively referred to as 'Humana')." The identity of the "Humana Health Care Plan PPO members" is unclear, nor is it clear whether HIC is an affiliate of HHP for

- 7 -

purposes of the assignment. Where the agreement in question contains an ambiguity that requires admission of extrinsic evidence to resolve, a disputed question of fact exists, precluding summary judgment. *William Blair & Co. v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 334 (2005). Since there were questions of fact for the jury to resolve, the trial court's ruling denying summary judgment merged into the final judgment. *Direct Auto Insurance Co. v. Koziol*, 2018 IL App (1st) 171931, ¶ 19. Accordingly, we cannot consider Palos's contention that it was entitled to judgment on the liability claim as a matter of law. See *id.*

¶ 36                              C. Imposition of Sanctions for Spoliation

¶ 37    Palos contends the trial court erroneously imposed sanctions against Palos, pursuant to Illinois Supreme Court Rule 219(c) (eff. July 1, 2002), for the destruction of electronic records. Rule 219(c) provides that, for any party who fails to comply with discovery rules, the trial court "may impose upon the offending party *** an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred as a result of the misconduct, including a reasonable attorney fee." *Id.* The purpose of granting sanctions is to effectuate the goals of discovery rather than to punish a noncompliant party. *New v. Pace Suburban Bus Service*, 398 Ill. App. 3d 371, 384 (2010). Thus, "[a] just order of sanctions under Rule 219(c) is one which, to the degree possible, ensures both discovery and a trial on the merits." *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 123 (1998). Reversal of the trial court's imposition of sanctions is proper only where the record shows a clear abuse of discretion. *Id.*

¶ 38    Palos's complaint alleged that HIC reimbursed Palos for patient services at rates less than those it agreed to pay. As already noted, the parties were involved in heated and protracted discovery disputes prior to trial. The following facts are taken from the trial court's detailed and thorough orders, granting HIC's motion for sanctions and denying Palos's motion to reconsider.

¶ 39    On March 11, 2015, HIC requested information and documents from Palos (1) identifying "anyone providing professional consulting services, claim auditing, billing services, and/or verification of eligibility or benefits relevant to the lawsuit" and (2) databases, files, documents and logs concerning "facts pertinent to this litigation." Palos had contracted with JDA in 2005 to provide database management and computation of reimbursement services. However, Palos did not disclose JDA's existence in response to HIC's discovery request.

¶ 40    Judge Tailor entered an order on October 14, 2016, appointing Judge Sullivan to oversee and mediate all pending discovery. On October 15, 2016, Palos's vice president of finance, Roger Russell, instructed JDA "to permanently delete our data" and to send "a certificate verifying this has been completed." On February 24, 2017, and April 17, 2017, Russell asked JDA whether Palos's data had been deleted. On April 28, 2017, JDA informed Russell that all the data had been permanently deleted, and it issued a certificate of data destruction to Palos.

¶ 41    Pursuant to an order to produce an affidavit from a corporate representative, Palos submitted the declarations of Phyllis Marrazzo, a director of revenue cycle operations. On July 20, 2017, Marrazzo stated that JDA's documents were used to make inquiries to insurers about whether accounts were correctly paid. On August 14, 2017, she disclosed that JDA was involved in day-to-day operations for Palos and that JDA provided daily reports that specified the appropriate contract from which Palos expected reimbursement. As a result of these

disclosures, HIC served a subpoena on JDA for relevant documents. HIC subsequently learned that JDA had permanently deleted all of Palos's data.

¶ 42    On March 7, 2018, HIC filed a motion for Rule 219 sanctions against Palos for the deletion of the JDA data and for failure to disclose JDA's existence until after the deletion. The trial court granted the motion, finding that "Palos did not disclose the existence of the consulting contract with JDA, the nature of its services or its request that JDA destroy all of its records," despite HIC's discovery requests. The court determined that HIC should be compensated for the time and effort "spent in obtaining the disclosure of JDA's consulting services, of JDA's data, including all of the time spent in uncovering the wrongdoing, evaluating the nature and extent of the loss of such data, including the preparation and presentation in connection with the pending motions." The court ruled that an adverse instruction was also appropriate.

¶ 43    On April 30, 2018, Corby Bell of JDA informed counsel of record that he found the "ghost archive" in which JDA kept all Palos-related data older than one year. The archive was created by an unnamed engineer. After importing the data into JDA's software, Bell determined that he had "located all Humana contracts" and "all case notes." On May 15, 2018, 20 days before trial, JDA gave HIC access to its system in order to examine the data. HIC, however, had difficulty accessing and examining the data. Bell appeared in court to testify on May 30, 2018, eight days before trial. At the conclusion of his testimony, the trial court determined that Bell did not conclusively testify that the ghost archive was a complete archive. Also, the court could not determine whether the ghost archive was a "*bona fide*" backup of the data JDA destroyed in 2017.

¶ 44    Palos filed a motion to reconsider the sanctions, which the trial court denied. The court addressed Palos's argument that spoliation did not occur because there was no actual loss. The court emphasized that a Rule 219 proceeding is not the same as the tort of spoliation and that its sanctions order "was predicated on violations of discovery rules and a litigant's obligation to preserve evidence in ongoing litigation." In ruling on a motion for Rule 219 sanctions, "the court need only determine that some sanctionable conduct occurred—failure to preserve or otherwise." The trial court found that sanctionable conduct occurred where Palos "conceal[ed] JDA's existence until it was too late for [HIC] to adequately evaluate the JDA data." The court also was "not persuaded the Ghost Archive was complete." Even if it was "a complete archive of the data, it was produced too late, and [HIC] was prejudiced" because it "did not have a reasonable opportunity to inspect the data in advance of trial."

¶ 45    On appeal, Palos again raises the argument that it was error for the trial court to impose a monetary sanction for the destruction of evidence where no records were actually lost. The trial court thoroughly and carefully set forth the reasons for imposing sanctions, and we find no abuse of discretion. When the sanction includes reasonable expenses and attorney fees, as here, the only restriction imposed by Rule 219(c) is that the award of fees "must be related to misconduct arising from failure to comply with" the discovery rules. *Jordan v. Bangloria*, 2011 IL App (1st) 103506, ¶ 19. Palos makes no contention that the monetary sanction ordered by the court did not comply with this restriction.

¶ 46    The trial court also did not abuse its discretion in giving a jury instruction based on Illinois Pattern Jury Instructions, Civil, No. 5.01 (2011) (hereinafter IPI Civil (2011)). The court noted that before using the instruction, it must find that "in all likelihood a party would have produced *** the document under the existing facts and circumstances, except for the fact that the contents would be unfavorable." The court stated that it was "making that finding today." The

- 9 -

trial court further found that Palos's failure to produce the evidence created a presumption that the evidence was adverse to Palos. The court stated that it "heard nothing to rebut that presumption." The instruction given to the jury stated:

> "Palos Community Hospital hired JDA to monitor and report whether insurance companies were paying to Palos the correct rates under the contracts between Palos and other insurance companies. After this lawsuit was filed, Palos ended its contract with JDA and instructed JDA to destroy all data relating to its work for Palos. The data that was destroyed should have been preserved by Palos and produced to [HIC] in this case. [HIC] was deprived of information relevant and probative to issues in this case. You may infer that the information that was destroyed would be adverse to Palos."

¶ 47 Whether to give IPI Civil (2011) No. 5.01 is within the sound discretion of the trial court. *Simmons v. Garces*, 198 Ill. 2d 541, 573 (2002). Jury instructions must "fairly, fully, and comprehensively apprise[ ] the jury of the relevant legal principles." *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 273-74 (2002). A reviewing court will not reverse the trial court for giving erroneous instructions "unless they clearly misled the jury and resulted in prejudice to the appellant." *Id.* at 274.

¶ 48 Palos first argues that the court erred in giving an adverse inference instruction where Palos had a reasonable excuse for the destruction of the evidence: Palos requested that JDA destroy the evidence in order to protect the privacy of its patients. Giving IPI Civil (2011) No. 5.01 is unwarranted if a reasonable excuse exists for a party's failure to produce the evidence. *Simmons*, 198 Ill. 2d at 573. However, while Palos provided an explanation for why it asked JDA to destroy all of Palos's data, nothing in the record supports that the complete destruction of the data was reasonable or that it was the only way to protect patient privacy. Even if Palos had ordered the destruction of the evidence in good faith, there is no reason why it did not inform HIC of its contract with JDA in response to discovery requests. The trial court found that Palos should have disclosed this information. The court concluded that "a reasonably prudent person under the same or similar circumstances would have offered the evidence if it believed the evidence was in its favor" and found that giving the adverse inference instruction was "appropriate under the facts of this case."

¶ 49 Palos also raises a number of conclusory arguments, including that no data was lost, it had already produced the data under protective order, JDA's "case notes" have no bearing on Palos's claim, and the trial court barred Palos from presenting "exculpatory or rebuttal evidence." Palos's brief provides no specifics on each of these claims with few citations to the record. On the issue of whether data had been lost, Palos for the first time argues in its reply brief that the trial court improperly discounted the testimony of Ruth Chinski and erroneously gave weight to HIC's witness who "had no personal knowledge or expertise of the JDA system and only speculated that data could be missing." "Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

¶ 50 Furthermore, our standard of review is abuse of discretion, and as such, we do not substitute our judgment for that of the trial court. *Miranda v. The Walsh Group, Ltd.*, 2013 IL App (1st) 122674, ¶ 16. The trial court's findings are an abuse of discretion only if they are arbitrary, exceed the bounds of reason, or are contrary to recognized principles of law. *Id.* The trial court found that Palos failed to produce JDA's documents when HIC first requested such information on March 11, 2015, and instead ordered JDA to permanently delete the data. HIC did not

discover the existence of JDA or the data until Palos produced the statements of Marrazzo, pursuant to the court's order, in 2017. The court also was "not persuaded the Ghost Archive was complete." The court further found that even if it accepted that the ghost archive contained the complete collection of deleted data, HIC was prejudiced because it "did not have a reasonable opportunity to inspect the data in advance of trial." HIC was first informed of the archive a little over a month before trial was set to begin, JDA gave HIC access to their system only 20 days prior to trial, and HIC had an opportunity to question JDA in court about the archive 8 days before trial. The trial court found the adverse inference instruction "appropriate under the facts of this case." We find no abuse of discretion here.

¶ 51                    D. Dismissal of Fraud Claim; Denial of Motion to Amend Complaint

¶ 52        Palos contends the trial court erred when it dismissed the fraud claim in Palos's complaint as untimely. Fraud claims are subject to a five-year statute of limitations pursuant to section 13-205 of the Code (735 ILCS 5/13-205 (West 2016)). *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 19. The trial court found that "no later than July 1st, 2004, [Palos] knew of its injury and its wrongful cause, as evidenced by Stefo's letter." Therefore, the cause of action accrued "no later than that date." Since Palos filed its claim alleging fraud on June 21, 2013, the court found the claim barred by the statute of limitations. Palos argues, however, that subsequent discovery showed Palos learned of HIC's wrongdoing only in 2009 and, in any event, it was error for the trial court to make such a determination when the jury should have decided the issue.

¶ 53        The discovery rule, which applies to fraud claims, effectively "postpone[s] the start of the period of limitations until the injured party knows or reasonably should know of the injury and knows or reasonably should know that the injury was wrongfully caused." *Id.* ¶ 20. The term "wrongfully caused" does not mean the party has "knowledge of negligent conduct or knowledge of the existence of a cause of action." *Id.* ¶ 22. Rather, it means the party "possesses sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct had occurred." *Janousek v. Katten Muchin Rosenman LLP*, 2015 IL App (1st) 142989, ¶ 13. At that point, the injured party bears the burden to inquire further as to the existence of a cause of action. *Khan*, 2012 IL 112219, ¶ 20. When a party knows that an injury was wrongfully caused is a question of fact, "unless the facts are undisputed and only one conclusion may be drawn from them." (Internal quotation marks omitted.) *Id.* ¶ 21.

¶ 54        Palos alleged in its complaint that HIC fraudulently induced Palos to enter into the ChoiceCare agreement in 2002, intending to reimburse Palos "at rates materially lower than the discounted PPO rates in the 2002 ChoiceCare Agreement." Palos further alleged that HIC, through its fraudulent scheme, concealed the fact that it had reimbursed Palos "at rates materially lower than the agreed-upon ChoiceCare PPO Rates." On July 1, 2004, Stefo, the chief financial officer of Palos, sent a letter to Humana stating that "Choice Care is accessing Humana's PPO discounts" applicable to the agreement with the former MRHP, when the "separate agreement with Choice Care *** should govern the payments received for services rendered to its members." Stefo understood that Palos was not receiving the correct reimbursement rate from HIC and requested HIC to pay the "proper, additional reimbursement due to Palos." There is no question that Palos knew of the underpayment, at the latest, on July

1, 2004. The statute of limitations began to run, however, when Palos not only knew of the injury but also knew or reasonably should have known it was wrongfully caused. *Id.* ¶ 20.

¶ 55    On this point, Palos argues that Stefo in his letter viewed the underpayment as a mistake and that Palos did not follow-up on the letter because it had assumed HIC corrected the error. Since Palos did not know of HIC's "systemic, fraudulent underpayment" until 2009, Palos did not know its injury was wrongfully caused until that date.

¶ 56    The standard, however, is not whether Palos knew of the existence of a cause of action. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 415 (1981). Rather, a party has knowledge that an injury was wrongfully caused when "the injured party possesses information sufficient to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Melko v. Dionisio*, 219 Ill. App. 3d 1048, 1058 (1991). Even if we accept Palos's argument that it did not know HIC's underpayment was wrongfully caused in 2004, it is evident that at some point before May 2008, Palos possessed sufficient information concerning the cause of its injury to inquire whether actionable conduct had occurred. Palos undisputedly hired HealthCheck in May 2008 as a contract compliance auditor. In 2009, after HealthCheck reported its findings to Palos, Palos filed a complaint with the Illinois Department of Insurance. In November 2009, HealthCheck also complained on Palos's behalf.

¶ 57    Although Palos may have believed in 2004 that HIC's underpayment was just a mistake, Palos clearly obtained information between 2004 and May 2008 that caused it to inquire further into whether HIC's practice of underpayment was actionable conduct. This is the point at which the limitations period began to run. See *Hoffman v. Orthopedic Systems, Inc.*, 327 Ill. App. 3d 1004, 1010-11 (2002). The question of when Palos obtained that information is generally one of fact. *Khan*, 2012 IL 112219, ¶ 21. However, it is undisputed that Palos filed its complaint on June 21, 2013, more than five years after May 2008, the date Palos hired HealthCheck to audit compliance with its contracts. Most likely, Palos had sufficient knowledge that its injury was wrongfully caused before May 2008. When Palos knew or reasonably should have known its injury was wrongfully caused may be decided as a matter of law if only one conclusion can be drawn from undisputed facts. *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 169 (1981). We agree with the trial court's determination that Palos's fraud claim was time-barred as a matter of law.

¶ 58    Palos also contends that the trial court should have granted its motion to amend the complaint to add a new fraud claim. In its brief, however, Palos mentions only "a new fraud claim based on the new information regarding Humana's fraudulent misrepresentations" concerning HIC's use of "Humana Health Care Plans as an undisclosed and unregistered d/b/a name." Exactly what the new claim alleged is not specifically set forth. Nor can we find a copy of the proposed amended complaint in the record. "[A] reviewing court is not simply a depository into which a party may dump the burden of argument and research." *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56. Furthermore, Palos's brief contains no analysis on the issue and cites only general law that courts should liberally construe section 2-616(a) of the Code (735 ILCS 5/2-616(a) (West 2018)) to allow amendments. "A point not argued or supported by citation to relevant authority fails to satisfy the requirements of" Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018). *E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56. Palos's failure to comply with Rule 341(h)(7) results in forfeiture of this issue on appeal. *Id.*

¶ 59                      E. Barring Evidence of Damages.

¶ 60        Palos's final contention is that the trial court erred in barring Palos from presenting any evidence to quantify damages claimed under its legal theories. Palos argues that the ruling prejudiced it because liability and damages were intertwined in this case. We disagree. Palos's breach of contract claim alleged that HIC improperly reimbursed Palos for services pursuant to the rates in the MRHP direct contract, when it should have applied the rates in the ChoiceCare agreement instead. Whether HIC was liable for breach of contract depended on which contract applied, and the actual amounts due under each agreement had no bearing on that core issue. Furthermore, the jury ultimately found HIC not liable for breach of contract because Palos failed to show that the ChoiceCare agreement rates applied to HIC. We have found no reason to reverse the jury's determination. Since HIC did not breach the agreement, we need not address Palos's damages argument. *Adams v. The Lockformer Co.*, 167 Ill. App. 3d 93, 104 (1988); see also *Hagerty, Lockenvitz, Ginzkey & Associates v. Ginzkey*, 85 Ill. App. 3d 640, 642 (1980) (court did not address measure of damages claim where there was no breach of the agreement).

¶ 61                      IV. CONCLUSION

¶ 62        For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 63        Affirmed.